Janine A. WAGNER,
Plaintiff–Appellant,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,
Defendant–Appellee.

No. 1290, Docket 90–6023.

United States Court of Appeals,
Second Circuit.

Argued May 3, 1990.
Decided June 22, 1990.

Esther R. Goldbas, Andrew D. Miller, law student interns, Ithaca, N.Y. (Barry Strom, Cornell Legal Aid, Ithaca, N.Y., of counsel), for plaintiff-appellant.

Judith L. Pearlstein, Asst. Regional Counsel, New York City (Michael J. Astrue, Gen. Counsel, Annette H. Blum, Regional Chief Counsel, U.S. Dept. of Health and Human Services, Frederick J. Scullin, U.S. Atty., N.D.N.Y., Syracuse, N.Y., of counsel), for defendant-appellee.

Before LUMBARD, FEINBERG and WINTER, Circuit Judges.

WINTER, Circuit Judge:

In this action under 42 U.S.C. § 405(g) (1982), plaintiff-appellant Janine Wagner sought to overturn the denial by the Secretary of Health and Human Services ("Secretary") of disability benefits for the period between September 10, 1980 and August 12, 1983. Chief Judge McCurn upheld the Secretary's decision. On appeal Wagner asserts that the Secretary and the district

court failed to accord the proper weight to the opinion of her own doctor under the "treating physician rule." We agree. Wagner's physician has opined that the disabling symptoms he chronicled during the time period in question were caused by the syndrome responsible for her present (post–1983) disability. The Secretary has offered no evidence to the contrary. We therefore order that benefits be awarded effective September 10, 1980.

## BACKGROUND

The back-benefit issue arises from a consolidation of separate disability applications filed by Wagner. The first, submitted November 25, 1980, claimed that a variety of impairments, including collagen disease, muscle disease affected by allergies, and arthralgia, prevented her from working. The claimed onset date for these disabling symptoms was September 10, 1980. The Secretary denied this application. Wagner requested a formal hearing, after which the Administrative Law Judge ("ALJ") found that, although Wagner could not return to her job as a parts inspector, she did retain the functional capacity for sedentary work and was therefore not disabled. The Appeals Council denied Wagner's request for review on July 13, 1982. Wagner thereafter filed suit in the Northern District pursuant to 42 U.S.C. § 405(g). Magistrate Smith concluded that the Secretary's finding of an absence of disability was supported by substantial evidence. After the district court adopted the magistrate's recommendation, Wagner appealed.

Meanwhile, Wagner had filed a second application for benefits. This application, submitted on September 22, 1983, stated that, in addition to the symptoms identified in her initial application, she was experiencing, inter alia, severe headaches and weakness on her left side, and had had a stroke in August 1983. Because she was still litigating the Secretary's denial of benefits on her first application, Wagner asserted an onset date of March 26, 1982, corresponding to the day after the announcement of the ALJ's decision following her hearing.

The "stroke" identified in Wagner's second application was technically a "stroke-like episode" which she suffered on August 11, 1983. This trauma required her hospitalization and left her with persistent and severe headaches as well as weakness on the left side of her body. Wagner was examined in late August 1983 by Dr. Ronald Naumann, a neurologist. Dr. Naumann diagnosed her condition as "hemiplegic migraine," a syndrome in which migraine headaches are accompanied or preceded by aphasia, confusion, and muscle weakness on one side of the body. After an initial denial, the Secretary awarded disability insurance benefits to Wagner on her second application, but only for the period commencing August 12, 1983, the day of her hospitalization for treatment of the stroke-like episode.

Disagreeing with this disposition to the extent that it denied disability for the period between March 26, 1982 and August 13, 1983, Wagner continued to pursue her remedies within the Department of Health and Human Services. As her appeal of the second application reached the hearing stage, her original application was remanded by this court and the district court to the Secretary for consideration of the hemiplegic migraine diagnosis with regard to the light it might shed on the 1980–82 period.

The Secretary consolidated consideration of the two applications. Hearing the matter on the existing record at the request of the Secretary, the ALJ issued the decision that is the subject of the instant appeal. We summarize the material aspects of that record. Wagner's primary treating physician from 1972 through the period in question was Dr. Stephen Blatchly, a board-certified family practice physician. In September 1980, a combination of symptoms including severe muscle and joint pain and depression, for which she had been treated by Dr. Blatchly for several years, intensified to such an extent that Wagner could not continue to perform her job as a parts inspector in a typewriter-manufacturing plant, a position she had held since 1974.

Wagner's symptoms eluded easy diagnosis. Dr. Blatchly ran a battery of tests, but was never able to state with confidence exactly what was causing her pain. His early diagnoses included bronchitis, arthritis and "collagen disease," a term describing any one of a number of diseases featuring widespread pathological changes to the connective tissue. Although unable to pinpoint the origins of Wagner's problems, Dr. Blatchly continued to treat her symptoms by prescribing a variety of pain relievers and antidepressants.

Wagner was also examined by a number of other physicians during the period in question. On November 6, 1980, she was seen by Dr. Jerry Hersh, another board-certified family practitioner, in connection with her employer's disability insurance requirements. Dr. Hersh, after speaking over the phone with Dr. Blatchly, noted the latter's then-current diagnoses of bronchitis and collagen disease and, in response to the insurance form's query as to his own personal diagnosis, answered "anxiety & depression" complicated by respiratory symptoms possibly caused by allergies. Dr. Hersh stated that Wagner was disabled primarily on the basis of "underlying problems of anxiety and depression," but specifically acknowledged that she was not in his opinion "malingering," and indicated that his findings suggested a period of disability prior to his examination.

Wagner was also referred to Dr. John Hirshfeld, a board-certified general surgeon, for a consultative examination pursuant to her first application. The exam was conducted on March 17, 1981. His report notes her complaints of constant pain in her legs, back and left arm and her difficulty in walking. His physical examination revealed a normal range of motion in her extremities and no external indicia of disabling disease. Describing the patient as "an enigma," he suggested that her problems were emotional, but conceded that, although he was "inclined to doubt" it, she might be suffering from some undiagnosed disease.

In May and June 1982, Wagner was twice examined at Dr. Blatchly's suggestion by Dr. John Jabbs, an internist and rheumatologist. Dr. Jabbs, a specialist in connective tissue diseases, found no indication of collagen disease or any other serious somatic disorder. He noted that she displayed great discomfort upon examination but pointed out that her pain seemed exaggerated, "in that standard noxious stimuli caused inappropriately great pain reactions." Like Dr. Hirshfeld, he believed that while "[r]emotely she could have some form of neurological disease," her symptoms were more likely "psychogenic or hysteric."

The only psychiatric specialist to examine Wagner was Dr. Jennifer Rich, who saw her in October 1981. Dr. Rich credited Wagner's reports of physical pain on the basis of her appearance in the examination room, and surmised, apparently after reviewing Dr. Blatchly's reports and taking an oral history from the patient, that her "underlying disorder ... appear[ed] to be one of the collagen disorders." In the context of her discussion of Wagner's physical difficulties, Dr. Rich stated that Wagner was "markedly disabled." Her psychiatric diagnosis was adjustment disorder with depressed mood.

The record also includes notes by Dr. Naumann, who made the eventual diagnosis of hemiplegic migraine. They state that, immediately prior to the stroke-like trauma, Wagner "was in her normal state of good health."

Dr. Blatchly, as Wagner's treating physician, consistently took the position before the Secretary that his patient was disabled. In his initial testimony in 1981, he stated that it was "impossible for her to sit for any period of time, [or] ... to stand for long periods of time." Reporting that she had to change positions almost constantly to avoid discomfort, pain medications notwithstanding, Dr. Blatchly asserted unequivocally, "[t]here is no question in my mind having treated her repeatedly ... that Mrs. Wagner is totally and permanently disabled." Although his then-current diagnosis was "arthritis non-specific with associated anxiety depression," he admitted at the hearing that he was not sure what

her syndrome would "turn out to be," and that he could not yet "give her a good handle for it."

After the stroke-like episode of August 1983, however, Dr. Blatchly became convinced that the hemiplegic migraine that had manifested itself in that trauma had also been the cause of Wagner's symptoms over the preceding three years. He stated his revised conclusions in an October 1984, letter to the ALJ:

This 36 year old white female, who has been an extremely puzzling problem over the past five years, has finally clarified the cause of her disability and her problems. She has had a long and involved history of lower back pain, left leg pain, depression and headaches. There has been little question in my mind that the patient has had a real disease, but I have been totally frustrated in being able to be specific as to what the disease was until August of 1983, at which time she showed evidence of stroke-like symptoms and was seen by Dr. Naumann in Syracuse who made the diagnosis of hemiplegic migraine. With the migraines extending to paralysis of the left arm and leg, accompanied by aphagia, and in reviewing her previous symptoms it now became clear that her problems over the past four years have been related to the unusual migraine central nervous system activities. This confirms my clinical impression that the many aches and pains, primarily the left buttocks and left leg and the headaches were in fact the forerunner of the migraine hemiplegia.

\* \* \* \* \* \*

Unfortunately, there is no easy test for this condition that could have given the diagnosis earlier. It is my opinion that this patient has been totally and permanently disabled since 1980 and that there is no known treatment at the present time that will project her being able to return to employability of any kind in the foreseeable future.

Dr. Blatchly repeated these conclusions in answers to the ALJ's questionnaire concerning the appeal of the denied benefit period on the second application. After the consolidated review, the ALJ issued a recommended decision denying benefits for the pre–1983 period. Although he found that Wagner had an adjustment disorder with depressed mood during the period in question, he did not credit her claim of total disability and found that she had at the pertinent times the residual functional capacity for a wide range of sedentary work. After a careful and exhaustive summary of the medical record, the ALJ explained precisely why he did not defer to Dr. Blatchly's retroactive diagnosis:

Dr. Blatchly, employing a "hindsight rule", contends that the claimant has had this particular impairment all along. The claimant and Dr. Blatchly both testified at the September 29, 1981, hearing conducted by "the first Administrative Law Judge"; and the minutes of that hearing clearly reflect that both were given a very full opportunity to reveal the claimant's medical problems. Headaches and left-sided weakness were *not* among the symptoms disclosed. Rather, right hip pain due to "arthritis", and allergies were featured. The many medical reports, authored prior to August 12, 1983, also do not mention headaches or left-sided weakness. As a last resort, the undersigned sought a transcription of Dr. Blatchly's office notes, to see if those notes would reveal any symptomatology or treatment akin to the August 12, 1983 headache and left-sided weakness. The undersigned was unable to read a good portion of the handwritten office notes (Exhibit B–43, pages 1 and 2); but Dr. Blatchly kindly provided a typewritten transcription of his office notes, covering a time period from September 10, 1980 through July 29, 1983. (Exhibit B–42.) Since those office notes also do not suggest any symptoms or signs even remotely corresponding to the claimant's symptoms and signs of August 12, 1983, and thereafter; the undersigned discounts Dr. Blatchly's "hindsight" contention that the claimant's disability began long before she experienced the "stroke-like symptoms" on August 12, 1983.

The Appeals Council issued a final decision on November 30, 1987, adopting the ALJ's findings and conclusions. Wagner again sought judicial review in the district court. Judge McCurn, after again referring the matter to Magistrate Smith, found that the Secretary's determination was supported by substantial evidence. This appeal followed.

## DISCUSSION

■ Under 42 U.S.C. § 405(g), review by the courts of the Secretary's decision is not *de novo*, but is instead limited to an assessment of the Secretary's general treatment of the administrative record. If there is substantial evidence in the record to support the Secretary's findings, they are conclusive. *See Havas v. Bowen*, 804 F.2d 783, 785 (2d Cir.1986). "Substantial evidence" has been defined as " 'more than a mere scintilla' " and as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

In reviewing the decision of the district court, we undertake our own review of the administrative record in order to determine whether substantial evidence supports the Secretary's decision, such that "our focus is not so much on the district court's ruling as it is on the administrative ruling." *See Valente v. Secretary of Health and Human Services*, 733 F.2d 1037, 1041 (2d Cir. 1984).

The statutory standard for entitlement to disability benefits is set out in 42 U.S.C. § 423 (1982 & Supp. V 1987). An entitlement will not arise unless a claimant meets the insured-status criteria of 42 U.S.C. § 423(c) and establishes his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Furthermore, benefits will be paid "only if [a claimant's] physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

■ With regard to the existence of a "medically determinable" impairment under Section 423(d)(1)(A), Wagner argues that the focus of this inquiry should be upon symptoms, not their underlying causes. She thus contends that the failure of Dr. Blatchly and the other physicians to isolate and identify her disease prior to 1983 should not overshadow the facts from that period tending to establish that she was disabled. *See, e.g., Sparks v. Bowen*, 807 F.2d 616, 618 (7th Cir.1986) ("The etiology of many medical conditions is obscure; symptoms are easier to study than are causes. That physicians do not know why a person has a condition does not make that condition any less disabling."). However, the *Sparks* court recognized that the statute requires "evidence of an objectively demonstrated abnormality." *Id.* at 618. A physical or mental impairment giving rise to disability benefits is one which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(1)(A) and (3); *see also* 20 C.F.R. §§ 404.1505 and 404.1508 (codifying statutory standard in Social Security regulations).

It cannot be said, then, that the generalized agreement among those doctors who had treated Wagner prior to August 1983 that she was disabled, without more, establishes her eligibility for benefits. Until the diagnosis of hemiplegic migraine, plaintiff's condition was described openly and often by Dr. Blatchly and others as completely puzzling. After the stroke-like episode, Dr. Blatchly asserted that it was the long-awaited manifestation of the illness and that the preceding years of enigmatic symptoms should be attributed to the cur-

rently diagnosed syndrome. It is to this reconstruction of ailments that we now turn.

At issue is the application to Wagner's case of the "treating physician" rule, under which the medical opinion of the doctor who regularly treated the claimant is given extra weight relative to other medical evidence in the record. The rule has been articulated as follows:

[A] treating physician's opinion on the subject of medical disability, i.e., diagnosis and nature and degree of impairment, is: (i) binding on the fact-finder unless contradicted by substantial evidence; and (ii) entitled to some extra weight because the treating physician is usually more familiar with a claimant's medical condition than are other physicians, although resolution of genuine conflicts between the opinion of the treating physician, with its extra weight, and any substantial evidence to the contrary remains the responsibility of the fact-finder.

*Schisler v. Heckler*, 787 F.2d 76, 81 (2d Cir.1986).

After October 1984, it was the stated opinion of Wagner's treating physician that she had been unable since 1980 to perform substantial gainful work of any kind because of symptoms associated with hemiplegic migraine. The Secretary introduced no medical evidence to contradict that opinion. Essentially, the Secretary's position is that Wagner's and Dr. Blatchly's failure to present a contemporaneous record of hemiplegia-related symptoms during the period in question, combined with the absence of such symptoms or findings in the other physicians' reports, renders the after-the-fact diagnosis inherently incredible.

The Secretary relies upon *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983), for the proposition that he "is entitled to rely not only on what the record says, but also on what it does not say." The Secretary also points out that such a retrospective diagnosis must be evaluated in terms of whether it is predicated upon a medically acceptable clinical diagnostic technique and whether, considered in light of the entire record, it establishes the existence of a physical impairment. *See Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir.1981); *Stark v. Weinberger*, 497 F.2d 1092, 1097 (7th Cir.1974).

The Secretary's reliance on *Dumas* is unavailing. *Dumas* did not authorize the Secretary to discard a treating doctor's opinion on the basis of prior omissions in the record. The assertion discredited in that case was one made by the claimant without the direct support of the physician. *See Dumas*, 712 F.2d at 1552–53.

With regard to the requirement stated in *Dousewicz* of a clinically acceptable diagnostic technique, we believe that Dr. Naumann's diagnosis of hemiplegic migraine, adopted by the Secretary as the basis for post–1983 disability, is sufficient. The Secretary may be doubtful of the connection between Wagner's present condition and her pre–1983 symptomology, but, if so, he should have offered medical testimony specifically addressed to that nexus or lack thereof. Except for Dr. Blatchly's opinion, none of the medical evidence in the record confronts the question of whether the 1983 trauma explains the preceding three years' ailments.

The finding that the 1981 hearing transcript establishes that "[h]eadaches and left-sided weakness were *not* among the symptoms disclosed" is certainly not dispositive. As lay persons, we do not know that the absence of such findings would preclude a diagnosis of hemiplegic migraine. Moreover, the failure of Dr. Blatchly's office notes to reflect hemiplegic-sounding symptoms is conclusive of very little. These "notes" take up a single page for the three years at issue. They are almost exclusively indications of medications prescribed, with a stray pathological observation here or there. It thus cannot be seriously argued that they represent an exhaustive record of Wagner's condition over the whole period. In addition, one of the few symptomatic references on the page reads, "pain now in other leg" in January 1983, indicating that either before or after that time there had to be some

complaint of left-side leg pain. Dr. Hirshfeld's report indicated left-arm pain as well.

We do not cite these facts as a *de novo* confirmation of Dr. Blatchly's opinion, for we agree that that opinion might be subject to attack. There are inconsistencies, for instance, between the November 1984 questionnaire and his 1981 hearing testimony. We do offer these facts to demonstrate that a circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion.

The Secretary argues that Dr. Naumann's notes, in stating that Wagner was in a "normal state of good health" before her 1983 hospitalization, constitutes substantial evidence contradicting pre-August 1983 disability. However, Dr. Naumann had never examined Wagner before late August, and throwaway language summarizing assumptions as to her medical history counts for little in the face of a long history of documented infirmities. Her pre-August 1983 health was demonstrably not "good," albeit the causes of her symptoms were in doubt.

We note that Dr. Blatchly's opinion as to hemiplegic migraine disability included his assessment that her physical condition did not allow her to engage in any substantial gainful work after September 10, 1980, a necessary condition for benefits established in section 423(d)(2)(A). This conclusion, as set out in Dr. Blatchly's hearing testimony and his 1984 answers to the questionnaire, was not substantially contradicted, and was therefore entitled to deference from the Secretary.

The decision of the district court is reversed. We order the award of back benefits to Wagner for the period spanning September 10, 1980 to August 12, 1983.