Nicholas S. **DOWNS**, Plaintiff,

v.

Kenneth **APFEL**, Commissioner of the Social Security Administration, Defendant.

No. 97–CV–6194L.

United States District Court, W.D. New York.

June 11, 1998.

Nicholas J. Downs, III, Rochester, NY, Pro se.

Anne VanGraafeiland, Asst. U.S. Atty., United States Attorney, Rochester, NY, for defendant.

### ORDER

LARIMER, Chief Judge.

### INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") that plaintiff was not disabled, and therefore, was not entitled to disability benefits. This Court finds that the Commissioner's decision was not supported by substantial evidence and accordingly remands the matter for further administrative proceedings.

### PROCEDURAL BACKGROUND

Plaintiff Nicholas Downs ("Downs") was born on July 17, 1952 and is presently forty-five years old. (T. 94).[1]  On March 5, 1993,

---

1. "T. ___" refers to the page of the transcript of the Administrative Record filed by the Commissioner with his Answer.

Downs applied for Social Security disability and Supplemental Security Income ("SSI") benefits. (T. 46–48). He claimed that he was unable to work since December 31, 1992 due to a "bad back" and "alcohol." (T. 137). The Social Security Administration ("SSA") denied his applications initially and upon reconsideration. Thereafter, on October 18, 1994, plaintiff reapplied only for disability benefits. (T. 94–97). Plaintiff again stated he was unable to work since December 31, 1992, but claimed disability due to a heart condition—noting a second heart attack on October 10, 1994, back pains, stress, seizures, tiredness and alcoholism. SSA again denied his application initially and upon reconsideration. (T. 98–100, 127–30). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and it was held on May 14, 1996.

On July 1, 1996, the ALJ issued a decision in which he found that plaintiff was not entitled to disability benefits. (T. 10–20). On February 25, 1997, the Appeals Council notified plaintiff that it would not review the ALJ's decision. (T. 5–6). The ALJ's decision thus became the Commissioner's final decision, and plaintiff commenced this action. Presently before the Court is defendant's motion for judgment on the pleadings pursuant to FED. R. CIV. P. § 12(c). Although Downs appeared with a representative at both the hearing and before the Appeals Council, he appears pro se in this action.

## FACTUAL BACKGROUND

Downs has a history of treatment for heart conditions. He was hospitalized in 1986 for a "[s]ubendocardial anterior myocardial infarction." (T. 192). Downs recovered from that episode with angioplasty and returned to work. There are no records of further problems with his heart until October 1994. (T. 253). However, he was hospitalized on October 10, 1994 for an acute myocardial infarction. (Id.). About one month later, on November 22, 1994, Downs suffered from a second myocardial infarction. (T. 288). He remained hospitalized until at least December 2. (T. 346). Downs underwent cardiac

catherization and an angioplasty during that stay. (T. 337–38, 346).

Downs also suffers from a seizure disorder that was originally diagnosed in 1972 and for which he took Dilantin. (T. 193, 198–99). He had a seizure within the three weeks prior to his 1994 hospital admission for the heart condition. (T. 271).

Downs claimed that he suffered from alcohol abuse and dependence. The record shows that he attempted treatment at least three times but did not complete the programs. (T. 448). At the time of the SSA hearing Downs was in therapy at an Action for a Better Community program (Community Alcoholism Services—Clinic), and he also attended Alcoholics Anonymous meetings twice a week. (T. 38, 471–89).

Downs underwent two consultative examinations in connection with his 1993 applications for benefits. (T. 458–66, 454–56). On June 25, 1993, Dr. Spallino performed a physical examination and concluded with findings of a "long history of alcohol abuse," a "myocardial infarction in 1986," " mild lumbosacral spine dysfunction with pain in the low back," and a "history of seizures" but "[a]t present he has spells that appear as panic attacks occurring when upset or anxious or when drinking." (T. 460).

On May 20, 1993, Samuel Seltzer, a licensed psychologist, evaluated Downs and concluded that he suffered from alcohol abuse and alcohol dependence and had a "guarded" prognosis., (T. 454–56). Seltzer also noted that Downs had poor insight and judgment, and appeared to be of low average intelligence. (T. 455).

On December 1, 1994, Dr. John Wolfe, at Genesee Health Services prepared a letter on Downs' behalf. (T. 363). Dr. Wolfe, who treated Downs since the early 1970's, (T. 364), noted Downs' heart condition, seizure disorder and history of chemical dependency and wrote "I feel that Mr. Downs is disabled for the foreseeable future and has been for the last several months." (Id.). Dr. Wolfe wrote that Downs' seizure control was good with medication, and that Downs "periodically complains of lumbar pain."[2] (Id.). Dr.

2. In at least one other report, Dr. Wolfe had

noted that plaintiff was noncompliant in control-

Wolfe also completed forms in 1996 regarding Downs' seizure disorder and his substance abuse. (T. 362). Dr. Wolfe concluded the form with the statement that "[h]is unresolved alcoholism + medical problems render him unemployable." (*Id.*).

In a report dated February 1, 1995, Dr. Ong, a cardiologist, gave a diagnosis of "[c]oronary artery disease, [m]yocardial infarction 1985, 1986, 1994." He recorded the following limitations on Downs' ability to work: walking, climbing, standing, stooping, bending, and sitting "may be performed to a limited extent." (T. 377). Dr. Ong also reported that lifting, carrying, pushing, pulling and "high rate of speed" "should not be performed." (*Id.*).

Downs worked between 1982–91 at a book bindery, where he was employed as a custodian, truck driver, and a machine operator. Between 1972–82, Downs worked in shipping at a chemical plant. (T. 185). He stopped working as a laborer for a temporary employment agency in December 1992. (T. 179).

## DISCUSSION

### A. *The Standard of Review*

The issue to be determined by this Court is whether the ALJ's decision that plaintiff was not under a disability is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. National Labor Relations Bd.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)). Thus, the determination of the Commissioner is conclusive as long as it is supported by substantial evidence and is not based on legal error. *Arnone v. Bowen*, 882 F.2d 34, 37 (2d Cir.1989) (citations omitted).

ling his convulsive disorder. *See, e.g.* T. 288.

### B. *The Standard for Finding a Disability*

A person is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A).

Plaintiff bears the initial burden of showing that his impairment prevents him from returning to his previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the [plaintiff] could perform." *Id.*; *see also*, *Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir.1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980).

In order to determine whether plaintiff suffers from a disability, the ALJ employs a five-step inquiry: (1) whether the plaintiff is currently working; (2) whether the plaintiff suffers from a severe impairment; (3) whether the impairment is listed in Appendix 1 of the relevant regulations; (4) whether the impairment prevents the plaintiff from continuing his past relevant work; and (5) whether there is other work which the plaintiff could perform. 20 C.F.R. § 404.1520; *Berry*, 675 F.2d at 467. If a claimant is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. § 404.1520(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir.1992).

### C. *The Commissioner's Arguments and My Findings*

The Commissioner argues that the ALJ's decision is supported by substantial evidence

and should be affirmed. The Commissioner notes that the ALJ found that Downs could no longer perform his past relevant work and was limited to performing a full range of sedentary work. Based upon this finding, the ALJ concluded that Downs was not disabled.

### 1. The Treating Physician Rule

█ A treating source's opinion of disability is entitled to some extra weight in claims for Social Security disability benefits. The Second Circuit Court of Appeals established the treating physician rule in a long series of cases, including *Schisler v. Bowen*, 851 F.2d 43, 47 (2d Cir.1988) (treating physician's opinion of disability binding unless contradicted by substantial evidence). However, the Commissioner promulgated new regulations in response to these holdings. Although these regulations altered the treating physician rule, the Second Circuit upheld the regulations' validity in *Schisler v. Sullivan*, 3 F.3d 563, 568—569 (2d Cir.1993). The present rule has been described in the following manner:

> Under 20 C.F.R. § 404.1527(d)(2) (" § 404.1527(d)(2)"), the medical conclusion of a "treating" physician is "controlling" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." The treating physician's opinion on the subject of medical disability, i.e., diagnosis and nature and degree of impairment, is: (i) binding on the fact-finder unless contradicted by substantial evidence; and (ii) entitled to some extra weight because the treating physician is usually more familiar with a claimant's medical condition than are other physicians.

*Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998), (citing *Murdaugh v. Secretary of Dep't of Health and Human Servs.*, 837 F.2d 99, 101 (2d Cir.1988), and *Schisler v. Heckler*, 787 F.2d 76, 81 (2d Cir.1986)).

In cases in which Social Security determines that a treating source opinion is *not* well-supported, the regulations require the ALJ to accord the physician's statements some extra weight based upon several factors. § 404.1527(d)(2). The factors cited in the regulations include the length of the treatment relationship, the nature and extent of the relationship, the supportability of the source's opinion, the consistency with other medical evidence in the record, whether the opinion involves the speciality of the physician, and any other factors that might be relevant.

In this case the ALJ ignored treating physician Wolfe's December 1994 opinion that Downs was disabled. (T. 364). The ALJ's decision never acknowledged that opinion, never evaluated whether the opinion was entitled to compelling weight, nor evaluated the factors outlined in the regulations to assign Dr. Wolfe's opinion any additional weight. This was clear error that requires remand.

The ALJ cited newer medical evidence to imply that Downs' condition improved so significantly after Dr. Wolfe's letter that that opinion was out of date by the time of the decision. Yet none of the newer evidence directly contradicts Dr. Wolfe's opinion. The newer evidence did not consider Downs' medical conditions in combination, but instead focused on only one of his impairments. For instance, Dr. Ong's February 1, 1995 assessment of Downs' functioning, while noting substantial limitations, only considered his heart condition. (T. 377). Even Dr. Wolfe's 1996 reports—on forms provided by Downs' attorney, asked questions individually about Downs' substance abuse and seizure disorder. (T. 356–62). Yet in a comment on the substance abuse questionnaire, Dr. Wolfe stated that "his unresolved alcoholism + medical problems render him unemployable." (T. 362). Dr. Wolfe's 1994 letter noted that Downs suffered from a seizure disorder, a cardiac condition and alcoholism, and thus on its face considered several of his impairments in combination. (T. 364). As previously noted, the ALJ erred when he did not evaluate these statements under the treating physician regulations. I therefore remand this case to the Commissioner to allow him to evaluate Downs' claim under the treating physician rule.

## 2. *Alcoholism*

The ALJ described Downs' substance abuse and his long, unsuccessful history of treatment to control his alcoholism. (T. 14). However, the ALJ found that this non-exertional impairment would not limit Downs' ability to perform a full range of sedentary work. (T. 15, 16). In his Memorandum of Law in Support of the Motion for Judgment on the Pleadings, the Commissioner adds another argument by noting a significant change in the law. (Item # 9, pp. 17–18). On March 29, 1996, Pub.L. 104–121, 110 Stat. 847 (1996) the "Contract with America Advancement Act of 1996" went into effect. Section 105 of the amendment, entitled "Denial of Disability Benefits to Drug Addicts and Alcoholics," amended the Social Security Act to provide that "[a]n individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C) ("the 1996 amendment"). The Act included the following statement as to the effective date of the 1996 amendment:

> The amendments made by paragraphs (1) and (4) shall apply to any individual who applies for, or whose claim is finally adjudicated by the Commissioner of Social Security with respect to, benefits under title II of the Social Security Act based on disability on or after the date of the enactment of this Act, and, in the case of any individual who has applied for, and whose claim has been finally adjudicated by the Commissioner with respect to, such benefits before such date of enactment, such amendments shall apply only with respect to such benefits for months beginning on or after January 1, 1997.

Pub.L. 104–121, § 105(a)(5)(A), 110 Stat. 847, 853 (1996).

The Commissioner argues that Downs is subject to the requirements of the 1996 amendment because the ALJ's decision in this matter was issued on July 1, 1996, *after* the amendment's March 29, 1996 effective date. The Commissioner thus implies that Downs' alcoholism is a contributing factor material to the determination of his disability. (Item # 9 at 17–18). Yet neither the ALJ nor the Commissioner appear to have fully considered the legal effects of Downs' history of alcoholism. The ALJ simply did not consider the effects of the 1996 amendment. The record shows that the ALJ never attempted to determine whether substance abuse was a contributing factor material to a finding of disability. Instead he found that Downs' alcoholism was not a significant non-exertional impairment. (T. 15, 16). Although the Commissioner argues that Downs cannot be entitled to disability benefits because alcoholism *would* be a contributing factor material to a finding of disability, such an argument ignores a "key factor" in determining disability for an individual with a history of alcoholism.

SSA's regulations provide that:

> The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 404.1535(b).

In *Sousa v. Callahan*, 143 F.3d 1240 (9th Cir.1998), the Ninth Circuit Court of Appeals mentioned these regulations and the 1996 amendment and held that "[c]laimants sub-

ject to [the 1996 amendment] must be given an opportunity to present evidence as to whether their disability would have remained if they stopped using drugs and alcohol." *Id.* (remanding case to allow plaintiff to present further evidence; evidence "once irrelevant" but, due to the 1996 amendment, now rendered material). As previously noted, the ALJ did not analyze Downs' alcohol abuse or dependence according to this standard; instead the ALJ found that Downs' history of alcohol abuse was not a significant nonexertional impairment. Since it appears that Downs would be subject to the 1996 amendment, on remand plaintiff should be provided with an opportunity to demonstrate that he would have been disabled if he had stopped using alcohol. *Id.* Given Dr. Wolfe's 1996 statement about the disabling effect of Downs' alcoholism plus his other medical impairments, this inquiry may be crucial to Downs' claim.

## CONCLUSION

The Commissioner's decision that Downs could still perform a full range of sedentary work was not supported by substantial evidence and is therefore reversed. Defendant's motion is **DENIED,** and the case is remanded, pursuant to 20 C.F.R. § 405(g), for further administrative proceedings, including consideration of the treating physician's opinion and an evaluation, pursuant to the Commissioner's regulations, of the effect of alcohol abuse on plaintiff's claim.

IT IS SO ORDERED.