Kimothy ZIMMERMAN, Plaintiff,

v.

**Larry G. MASSANARI, Acting Commissioner of Social Security, Defendant.**

**No. 01–CV–6168L.**

United States District Court, W.D. New York.

June 28, 2002.

William J. McDonald, Jr., Bond and Mc-Donald, Geneva, NY, for Plaintiff.

Christopher V. Taffe, United States Attorney Office, Rochester, NY, for Defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the final determination of the Commissioner of Social Security ("the Commissioner") that plaintiff was not disabled under the Social Security Act, and therefore, was not entitled to disability benefits. Plaintiff has moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), or, in the alternative, to remand the case for a new hearing. The Commissioner cross-moves for an order remanding the case for re-hearing pursuant to the fourth sentence of 42 U.S.C. § 405(g) because the Administrative Law Judge ("ALJ") failed to apply the correct legal standards, failed to assess the opinions of Drs. Lasser and Canfield, and failed to obtain additional information from Dr. Tahir. For the reasons outlined below, the Court finds that the Commissioner's decision was not supported by substantial evidence and accordingly re-mands the matter for further development of the administrative record.

## PROCEDURAL BACKGROUND

Plaintiff Kimothy Zimmerman ("Zimmerman") applied for Social Security Disability and SSI benefits on August 6, 1996. (Tr. 98).[1] His application was denied initially and on reconsideration. (Tr. 64, 71). Plaintiff requested a hearing before an ALJ, and a hearing was held in the case on November 10, 1998. (Tr. 28–49). The ALJ decided that plaintiff was not entitled to benefits and denied Zimmerman's claim. (Tr. 19–26). The ALJ's decision became the Commissioner's final decision on February 16, 2001 when the Appeals Council denied plaintiff's request for review. (Tr. 7). Plaintiff commenced this action on April 4, 2001, seeking review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

Zimmerman was born on August 26, 1962. (Tr. 98). Since slipping on ice in 1987, he has suffered consistent lower back pain. (Tr. 198). In 1990, he slipped and fell on his right shoulder, and has since had a decreased range of motion in the right arm. (Tr. 243). Zimmerman has a high school education. (Tr. 128). He formerly worked as a vineyard laborer, auto mechanic and security guard. (Tr. 133).

The medical records contained in the file delineate Zimmerman's complaints of back and neck pain, stemming from his 1987 fall. (Tr. 198, 231, 242). Most of Zimmerman's medical care has been provided by his primary care physician, Azhar Tahir, M.D. Zimmerman also began treatment with orthopedic surgeon Steven Lasser, M.D. in March, 1996. (Tr. 201).

---

1. "Tr.__" refers to the page of the transcript of the Administrative Record filed by the Commissioner with his Answer.

Dr. Tahir's office notes indicate that Zimmerman suffers from osteoarthritis, obesity, gastroesophagel reflux disease ("GERD"), generalized edema and hypertension. (Tr. 267). In 1993, Tahir noted that Zimmerman had problems with prolonged walking and lifting. (Tr: 208). In 1994, Zimmerman's condition had deteriorated to "chronic back and knee pain" (*Id.*), and since then he has been described as suffering from "continuing back pain." (Tr. 225, 227, 228). Between December, 1997 and September, 1998, Tahir noted Zimmerman's ability to lift and carry dropped from 15 pounds (Tr. 267) to 10 pounds (Tr. 321) to 5 pounds (Tr. 279). He also repeatedly noted that Zimmerman could walk less than 2 hours per day and was able to sit for less than 6 hours per day. (Tr. 268, 321, 279). Zimmerman lacks the normal ability to crouch, squat or climb (Tr. 302, 303, 321), and physical therapy was not recommended because it increased Zimmerman's pain. (Tr. 279). By July, 1999, Dr. Tahir was of the opinion that Zimmerman was "totally disabled." (Tr. 300).

In 1996, Dr. Lasser indicated that Zimmerman suffered from back pain secondary to lumbar disc disease. (Tr. 201). He also noted diffuse tenderness of the lower back near L5–S1 and a painful range of back motion. (*Id.*). An MRI taken in April, 1996 revealed degenerative changes of the T11–12, L4–5 and L5–S1 intervertebral discs with some mild posterior annular tears. (*Id.*). Dr. Lasser was of the opinion that "from a practical standpoint, [Zimmerman] is unable to work in any capacity." (Tr. 202).

A consultative examiner for the Commissioner, Wesley Canfield, M.D., noted that there was some hypesthesia over the dorsum of the left foot, and pinprick sensation was diminished compared to the right foot. (Tr. 244). He also noted that Zimmerman's greatest impairment appeared to be his morbid obesity, and that his prognosis was poor, and he probably could not even do sedentary work.[2] (Tr. 245). Two additional consultative examiners, Frank Norsky, M.D. and David Pulver, M.D., indicated that "there [were] no objective clinical signs of any significant disabling condition of the lumbosacral spine" (Tr. 232), and "claimant has a history of discogenic disease of the lumbar spine without significant findings at this time." (Tr. 199). Finally, the Commissioner retained Joung R. Oh, M.D. and Sury Putcha, M.D. to make a physical residual function capacity ("RFC") assessment without a physical examination. They opined that Zimmerman could lift and carry 50 pounds occasionally and 25 pounds frequently, and that he could stand, walk or sit for a total of about six hours in an eight hour work day. (Tr. 234, 258).

In spite of the assessments of Drs. Tahir, Lesser, and Canfield, the ALJ denied benefits, noting "the claimant retains the residual functional capacity to perform a full range of medium work, which would include his past relevant work...as a security guard, [which] requires a light level of exertion." (Tr. 21). He also noted that "the conclusions of the claimant's treating physician are not controlling since they are unsupported by objective evidence in the record." (Tr. 23). Finally, the ALJ explained he did not find credible Zimmer-

---

**2.** Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. A certain amount of walking and standing is often necessary in carrying out job duties. 20 C.F.R. §§ 404.1567(a) and 416.967(a). In addition, sedentary work requires the ability to sit, stand and/or walk for about six hours in an eight hour day. Social Security Ruling 83–10.

man's allegations of unbearable pain on an unrelenting 24 hour per day basis. (Tr. 24).

## DISCUSSION

*A. The Standard of Review*

■ The first issue to be determined by this Court is whether the Commissioner applied the correct legal standard. *See Tejada v. Apfel,* 167 F.3d 770, 773 (2d. Cir.1999); *see also Johnson v. Bowen,* 817 F.2d 983, 986 (2 Cir.1987) (holding that the court must first review the ALJ's decision for correct legal principles before applying the substantial evidence standard to uphold a finding of no disability); *see also Townley v. Heckler,* 748 F.2d 109, 112 (2d Cir.1984) ("[f]ailure to apply the correct legal standards is grounds for reversal").

■ The only other issue to be determined by the Court is whether the Commissioner's conclusions are supported by substantial evidence. *See Townley v. Heckler,* 748 F.2d at 112 ("It is not the function of a reviewing court to determine *de novo* whether a claimant is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are binding"). Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *See Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

*B. The Standard for Determining Disability*

A person is "disabled" under the Act, and therefore entitled to benefits, when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3). To qualify for benefits, the disability must be the result of an anatomical, physiological or psychological abnormality demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). Such a disability will be found to exist only if an individual's impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

■ Plaintiff bears the initial burden of showing that his impairment prevents him from returning to his previous type of employment. *See Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the [plaintiff] could perform." *See Id.; see also Dumas v. Schweiker,* 712 F.2d 1545, 1551 (2d. Cir.1983); *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980).

The Second Circuit has described the five-step process through which the Commissioner makes a determination as follows:

First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant

has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*See Tejada v. Apfel,* 167 F.3d at 774.

Here, the ALJ found that the plaintiff had not engaged in substantial gainful activity, and that his obesity constituted a severe impairment but that his "mild lumbar disc degeneration [was] not a severe impairment." (Tr. 25.). The ALJ next decided that plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (*Id.*). The ALJ also found that plaintiff had an RFC to perform work-related activities except for work involving lifting and carrying more than 50 pounds, and that plaintiff's past relevant work as a security guard did not require the performance of work-related activities precluded by this limitation. (*Id.*). While I conclude that the ALJ adhered to the appropriate analytical framework, I do not find that he applied the correct legal principles. Even if the ALJ had applied those principles

correctly, the remaining issue in this case would be whether substantial evidence supported the Commissioner's determination that plaintiff, despite his impairments, had the RFC to perform the full range of medium work relating to his previous employment as a security guard. I do not find substantial evidence in the record to support the ALJ's determination.

## C. The Parties' Arguments and the Court's Findings

Both plaintiff and the Commissioner move, under 42 U.S.C. § 405(g) for remand. In so doing, the Commissioner concedes that the administrative decision in this case is legally deficient. Plaintiff, on the other hand, also moves this Court to remand this case for calculation of benefits only.

### The Treating Physician Rule

■ Zimmerman argues that the ALJ improperly rejected the conclusions of his treating physicians, Dr. Tahir and Dr. Lasser. Drs. Tahir and Lasser both appear to have determined that, because of the effects of Zimmerman's back pain, he is "totally disabled" and "he is unable to work in any capacity." (Tr. 202, 300). It has long been recognized that a treating source's opinion is entitled to some extra weight in claims for Social Security disability benefits. The opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence. *See Rosa v. Callahan,* 168 F.3d 72, 78 (2d.Cir.1999); *see also Clark v. Commissioner,* 143 F.3d 115, 118 (2d Cir.1998) (citing 20 C.F.R. § 404.1527(d)(2)[3]). In

---

**3.** The regulations, applicable at the time of the ALJ's decision, and which were first promulgated in 1991, state: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and

is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Although these regulations have somewhat diluted the strength of the original rule, the ALJ must still

analyzing a treating physician's report, "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion," nor can he "set his own expertise against that of a physician who submitted an opinion or testified before him." *See Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir.1998) *citing McBrayer v. Secretary of Health and Human Servs.,* 712 F.2d 795, 799 (2d Cir.1983); *see also Wagner v. Secretary of Health and Human Servs.,* 906 F.2d 856, 862 (2d Cir.1990) ("a circumstantial critique by [a] non-physician[ ], however thorough or responsible, must be overwhelmingly compelling" to justify a denial of benefits).

In cases in which the Commissioner determines that a medical source opinion is *not* well-supported, the regulations require the ALJ to accord the physician's statements some extra weight based upon several factors. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).[4] The factors cited in the regulations include the length of the treatment relationship, the nature and extent of the relationship, the supportability of the source's opinion, the consistency with other medical evidence in the record, whether the opinion involves the speciality of the physician, and any other factors that might be relevant. *See Id.* The ALJ failed to accord the opinions of Drs. Tahir and Lasser any extra weight based on any of these factors.

■ In the present case, the ALJ rejected the opinion of plaintiff's primary physician, Dr. Tahir, finding that his opinion was unsupported by objective evidence in the record. (Tr. 23). The ALJ did not recontact Dr. Tahir for any objec-

tive and/or clinical laboratory findings he may have had in support of his opinion as required by 20 C.F.R. §§ 404.1512(e) and 416.912(e). An ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record. *See Schaal v. Apfel,* 134 F.3d 496, 505 (2d. Cir.1998) ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] *sua sponte.*"). The Commissioner concedes this point. Without such corroborating information, the ALJ was in no position to reject a primary physician's opinion. There is nothing "so overwhelmingly compelling" in the ALJ's critique of Dr. Tahir's findings as to permit the Commissioner to "overcome" an otherwise valid medical opinion. *See Rosa v. Callahan,* 168 F.3d at 79; *see also Wagner v. Secretary of Health and Human Servs.,* 906 F.2d at 862. As such, the ALJ's decision to disregard Dr. Tahir's opinion concerning plaintiff's condition was legal error that requires remand. *See Downs v. Apfel,* 9 F.Supp.2d 230, 233 (W.D.N.Y.1998) (remanding matter for further proceedings including consideration of treating physician's opinion).

■ Plaintiff argues that the Dr. Tahir's opinion should be given controlling weight. The record contains evidence from several other doctors, however, who examined plaintiff and made less favorable findings. The opinions of plaintiff's treating physicians are therefore "inconsistent with the other substantial evidence," 20 C.F.R. § 404.1527(d)(2), and hence not entitled to

---

give great deference to a treating physician's finding on disability.

4. The regulations provide: "When we do not give the treating source's opinion controlling weight, we apply the factors listed below, as well as the factors in paragraphs (d)(3)

through (5) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

**134**

controlling weight. *See Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir.1999).

■ The ALJ also failed to assess the opinions of Drs. Lasser and Canfield. Regulations require an ALJ to evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(d) and 416.927(d). This was clear legal error justifying remand.

■ In short, I concur with the parties' joint request to remand this case to the Commissioner for further administrative proceedings. There needs to be further development of the evidence before the Commissioner or the Court can determine whether benefits should be awarded. The delay that such a remand entails is indeed unfortunate, but until the record is clarified in a thorough and proper manner, and a proper decision is rendered on a complete record, no final decision can be made concerning plaintiff's entitlement to benefits.

With respect to plaintiff's motion to remand merely for calculation of benefits, the sparse evidence supporting Dr. Tahir's opinion of plaintiff's health, coupled with disagreement between the physicians who examined plaintiff, does not persuade this Court that there is but one conclusion in this matter. Upon close scrutiny of the present record, this Court cannot say with certainty that no purpose would be served by remand, or that plaintiff is clearly entitled to disability benefits. As such, remand for calculation of benefits is inappropriate at this time.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. # 4) is denied. Plaintiff's motion in the alternative, and the Commissioner's motion to remand under sentence four of 42 U.S.C. §§ 405(g) for further develop-ment of the administrative record (Dkt. # 7), is granted.

IT IS SO ORDERED.