ELIZABETH A. WOLFORD, United States District Judge *270 INTRODUCTION
Represented by counsel, Plaintiff Emily R. Vay ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 10; Dkt. 14). For the reasons discussed below, the Commissioner's motion (Dkt. 14) is granted and Plaintiff's motion (Dkt. 10) is denied.
BACKGROUND
Plaintiff protectively filed her application for SSI on January 16, 2014. (Dkt. 8 at 28, * * *).[2] In her application, Plaintiff alleged disability beginning January 16, 2014, due to anxiety, attention deficit hyperactivity disorder, pervasive development disorder, Asperger's syndrome, and learning disability. (Id. at 28, 425, 494, 498). Plaintiff's application was initially denied on April 9, 2014. (Id. at 28, 428-33). A video hearing was held before administrative law judge ("ALJ") William M. Manico on October 14, 2015. (Id. at 28, 376-99). Plaintiff and her mother appeared in Rochester, New York and the ALJ presided over the hearing from Alexandria, Virginia. (Id. ). On January 21, 2016, the ALJ issued an unfavorable decision. (Id. at 25-41). Plaintiff requested Appeals Council review; her request was denied on May 26, 2017, making the ALJ's determination the Commissioner's final decision. (Id. at 4-7). This action followed.
LEGAL STANDARD
I. District Court Review
"In reviewing a final decision of the [Social Security Administration ("SSA") ], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue , 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); see also 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue , 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." Schaal v. Apfel , 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); see also Wagner v. Sec'y of Health & Human Servs. , 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo *271 and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart , 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler , 748 F.2d 109, 112 (2d Cir. 1984) ).
II. Disability Determination
An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. See Parker v. City of New York , 476 U.S. 467, 470-71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.
At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). Id. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (id. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. See id. § 416.920(e).
The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. Id. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. Id. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. Rosa v. Callahan , 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); see also 20 C.F.R. § 404.1560(c).
DISCUSSION
I. The ALJ's Decision
In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since January 16, 2014, the application and alleged onset date. (Dkt. 8 at 30).
At step two, the ALJ found that Plaintiff suffered from the severe impairments of attention deficit hyperactivity disorder, reading disorder, anxiety disorder, and autism disorder. (Id. ). With respect to Plaintiff's representation that she suffered from speech delay, the ALJ concluded that this was not a medically determinable impairment. (Id. at 31).
*272 At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (Id. ). The ALJ particularly considered the criteria of Listings 12.02, 12.05, 12.06, and 12.10 in reaching his conclusion. (Id. at 31-33).
Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels, with the additional non-exertional limitations that Plaintiff:
retains the mental [RFC] to perform unskilled work where interactions with others are related to the work performed. Interactions with others as well as decision-making are limited to approximately a third of the workday. [Plaintiff] should be allowed a regular work break approximately every 2 hours and should not perform fast-paced assembly work.
(Id. at 33). At step four, the ALJ found that Plaintiff had no past relevant work. (Id. at 39).
At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of cleaner, hospital cleaner, hand packager, housekeeper, and mail clerk. (Id. at 40-41). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (Id. at 41).
II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error
Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that (1) the ALJ failed to develop the record with regard to Plaintiff's recent treatment; (2) the ALJ failed to properly assess Plaintiff's credibility; and (3) the ALJ mischaracterized the results of Plaintiff's treatment and testing, and therefore the RFC finding was not supported by substantial evidence. (Dkt. 10-1 at 16-27). The Court has considered each of these arguments and, for the reasons discussed below, finds them to be without merit.
A. Failure to Develop the Record
"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Perez v. Chater , 77 F.3d 41, 47 (2d Cir. 1996). Specifically, the ALJ must "investigate and develop the facts and develop the arguments both for and against the granting of benefits." Vincent v. Comm'r of Soc. Sec. , 651 F.3d 299, 305 (2d Cir. 2011). "The ALJ's duty to develop the administrative record encompasses not only the duty to obtain a claimant's medical records and reports, but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." Puckett v. Berryhill , No. 17 Civ. 5392 (GBD) (KHP), 2018 WL 6061206, at *2, 2018 U.S. Dist. LEXIS 197904, at *5 (S.D.N.Y. Nov. 20, 2018). The ALJ's duty to develop the record applies to both pro se and represented parties, and is heightened in the case of pro se plaintiffs." Lopez v. Comm'r of Soc. Sec. , No. 17-CV-1504(KAM), 2018 WL 5634929, at *5, 2018 U.S. Dist. LEXIS 186600, at *11 (E.D.N.Y. Oct. 31, 2018). However, the ALJ's duty to develop the record is not limitless. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information *273 ...." Rosa v. Callahan , 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation omitted).
Plaintiff contends that the record in this case is "noticeably and glaringly incomplete," and that a majority of the evidence considered by the ALJ pre-dates the onset of Plaintiff's impairments. (Dkt. 10-1 at 16). Plaintiff claims that this "demonstrate[s] the lack of ALJ development and effort to develop the record regarding medical treatment or evidence since Plaintiff's alleged onset." (Id. ). The Court disagrees.
As an initial matter, the Court notes that the ALJ did take affirmative steps to develop the record. At the administrative hearing, the ALJ asked Plaintiff's mother to supply him with any additional evidence she may have, including a doctor's opinion that Plaintiff is disabled, or a form listing limitations on Plaintiff's ability to work. (See Dkt. 8 at 390 ("So then my question becomes did some doctor fill out paperwork to the effect that she was disabled or considered her disabled?"); id. at 393 ("If you come across any kind of document like that that I've just mentioned, could you submit it to us, please?") ). Following the administrative hearing, on October 26, 2015, Plaintiff's mother submitted additional evidence, as requested by the ALJ. (See id. at 648-722). Accordingly, Plaintiff's statement that the ALJ did not take steps to develop the record is inaccurate. See Brown v. Colvin , No. 3:14-cv-1784(WIG), 2016 WL 2944151, at *3, 2016 U.S. Dist. LEXIS 66527, at *7 (D. Conn. May 20, 2016) ("When an ALJ holds open the record ..., the ALJ will be found to have fulfilled her duty to develop the record."). Additionally, the agency ordered two examinations from Adam Brownfeld, Ph.D., a consultative physician. (See Dkt. 8 at 597 (psychiatric evaluation), 601 (intelligence evaluation) ). The ALJ discussed Dr. Brownfeld's opinions relating to Plaintiff's functional limitations at length in the written determination. (Id. at 34-35).
Moreover, Plaintiff is incorrect that the record in this case contained obvious gaps that needed to be filled. The written determination contains a lengthy discussion of the evidence in the record considered by the ALJ in reaching his determination, including: (1) Dr. Brownfeld's March 26, 2014 consultative examinations; (2) Plaintiff's Individualized Service Plan (ISP) dated December 9, 2014, which addressed her performance in college, and her job at Marshalls; (3) Plaintiff's high school ISP, dated December 21, 2011, which addressed her performance in high school, as well as testing results from that time; (4) psychological evaluations from March 5, 2010, and March 8, 2010; (5) a July 24, 2007 assessment by Dr. DeMarle and Dr. Bauer; (6) an intelligence evaluation from June 30, 2014, by Beth Rapke, M.A.; (7) a socio-sexual knowledge and attitudes assessment administered by Ms. Rapke, dated July 3, 2014; (8) counseling notes from 2011; (9) an August 2, 2012 assessment from Dr. Breen; (10) evidence of guardianship, dated March 7, 2013; (11) an October 25, 2015 letter from Plaintiff's counselor, Lenore Nesta; and (12) a disability finding from the Office for People with Developmental Disabilities. (See Dkt. 8 at 34-39). While some of these records do pre-date Plaintiff's alleged onset date (January 16, 2014), several pieces of evidence - including Dr. Brownfeld's examinations, Plaintiff's December 2014 ISP, Ms. Rapke's evaluations, and the letter from Plaintiff's most recent counselor, Ms. Nesta - are from the alleged period of disability and, more importantly, reflect Plaintiff's functional limitations during that period.
Plaintiff contends that the ALJ should have attempted to obtain current or additional treatment evidence. However, *274 Plaintiff does not identify what relevant treatment records the ALJ should have allegedly worked to obtain, other than records from Ms. Nesta. (Dkt. 10-1 at 18). At the administrative hearing, Plaintiff's mother testified that Plaintiff was "seeing a counselor, Lenore Nestor [sic] ... I don't believe I gave you her name the last time because we had just started seeing her in 2014. We had to stop since - she's trying to go back to college and it was just time-wise. I couldn't get her out to see her so we had stopped for a couple weeks." (Id. at 382-83). Following the administrative hearing, a letter containing Ms. Nesta's opinion as to Plaintiff's disability, dated October 25, 2015, was submitted to the ALJ. (Id. at 650). In the written determination, the ALJ thoroughly discussed Ms. Nesta's opinion that Plaintiff's case is "truly a case that needs benefits." (Id. at 38). The ALJ explained that he assigned Ms. Nesta's opinion "little weight" because (1) Plaintiff attends college level classes, works part time at Marshalls, and seeks to live on her own; and (2) the consultative examinations do not support a disability finding, in that they revealed only mild and moderate limitations. (Id. at 39). As a social worker, Ms. Nesta's opinion relating to Plaintiff's disability was not entitled to controlling weight, see Marshall v. Berryhill , No. 17-CV-63070CJS, 2018 WL 6257430, at *3, 2018 U.S. Dist. LEXIS 203424, at *7 (W.D.N.Y. Nov. 30, 2018) (opinion of social worker was not from an acceptable medical source, and therefore was not entitled to controlling weight), and the ALJ gave proper reasons for rejecting Ns. Nesta's opinion, see Cortese v. Comm'r of Soc. Sec. , No. 16-cv-4217 (RJS), 2017 WL 4311133, at *5, 2017 U.S. Dist. LEXIS 158734, at *15 (S.D.N.Y. Sept. 27, 2017) (ALJ properly afforded opinion "little weight" where it "conflicted with findings ... of other medical professionals, which reflected that Plaintiff retained significant ability to functional normally"). Under these circumstances, the ALJ was not obligated to take additional steps to obtain Ms. Nesta's underlying treatment notes.
Plaintiff further contends that the ALJ "made no attempt to elicit testimony regarding current treatment nor did the ALJ make any effort to assist a pro se Plaintiff in developing a clear lack of current material." (Dkt. 10-1 at 16). Again, Plaintiff's characterization of the ALJ's conduct at the administrative hearing is incorrect. The ALJ was cognizant of the fact that Plaintiff appeared pro se , explained to Plaintiff and her mother that Plaintiff was entitled to an attorney, and confirmed that they wanted to proceed without an attorney. (Dkt. 8 at 378-79). The ALJ first questioned Plaintiff's mother regarding Plaintiff's diagnoses, experiences at work and in high school and college, treatment, and behavior, with which Plaintiff's mother was very familiar. (Id. at 380-85). Thereafter, the ALJ questioned Plaintiff about her high school classes, her ability to read, and her job at Marshalls. (Id. at 385-86). At certain points in the record, the ALJ emphasized that he wanted testimony from Plaintiff, rather than her mother. (See Dkt. 8 at 385 (regarding the kind of books Plaintiff reads, telling her mother "[n]o, I'm going to ask her"); id. at 386 (regarding why Plaintiff could not work at Marshalls full-time, clarifying, "[t]his question is for Emily") ). The ALJ also asked Plaintiff's mother about the connection she saw between Plaintiff's impairments and her stress, exhaustion, and anxiety, opinions she had received in the past regarding Plaintiff's inability to work, and Plaintiff's difficulties at work. (Id. at 386-92). As noted above, the ALJ also encouraged Plaintiff's mother to submit any additional documentation she had and instructed her on how to submit this information. (Id. at 393-94). The ALJ specifically *275 advised Plaintiff's mother as to steps she could take to uncover additional information, including individuals who she could contact. (Id. at 394, 398). The ALJ also questioned Plaintiff's mother regarding Plaintiff's treatment, asking about physicians who had seen Plaintiff (id. at 390-91) and inquiring as to whether there were any additional records that had not been presented (id. at 383-84).
Plaintiff notes that additional evidence was submitted to the Appeals Council, consisting mostly of school records and testing prior to Plaintiff's turning 18 and prior to the alleged onset date, and argues that this additional evidence demonstrates that the ALJ failed to develop the record. (Dkt. 10-1 at 16). This argument lacks merit. As noted above, the ALJ's duty to develop the record is not limitless, and the ALJ's failure to collect information that, as discussed below, largely predates the alleged onset date and is in any event duplicative, does not constitute reversible error.
To the extent Plaintiff argues that the Appeals Council improperly excluded this evidence, this argument is also rejected. The Appeals Council must consider "new" and "material" evidence if it "relates to the period on or before the date of the administrative law judge hearing decision" and there is "reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). Here, the Appeals Council acknowledged Plaintiff's submission but found that this evidence "[did] not show a reasonable probability that it would change the outcome of the decision." (Dkt. 8 at 5). As noted above, the record on which the ALJ assessed Plaintiff's RFC was adequate, and, as conceded by Plaintiff, the bulk of this evidence related to a time period that pre-dated the period of disability. See McManus v. Comm'r of Soc. Sec. , 298 F. App'x 60, 61 (2d Cir. 2008) ("no error in the ALJ's decision to exclude additional evidence proffered by" the plaintiff where the "evidence pre-dated the time period the ALJ was required to consider under 20 C.F.R. § 404.1512(d)"); James v. Berryhill , No. 17-CV-60S, 2018 WL 3153398, at *3, 2018 U.S. Dist. LEXIS 108314, at *7 (W.D.N.Y. June 27, 2018) ("Because the record was complete, the ALJ was under no obligation to look outside the relevant period for additional evidence"). Further, Plaintiff does not make any meaningful argument as to how the additional evidence submitted to the Appeals Council would have changed the outcome of the decision. Defendant specifically identifies the content of these records, including: 98 pages of duplicate information; records dated years before Plaintiff's alleged onset date, which provide information similar to the educational assessments already in the record; and 30 pages of documents relating to future care planning, reflecting that Plaintiff is capable of performing most tasks of daily living. (See Dkt. 14-1 at 30). Plaintiff does not dispute these facts. The Court finds that the Appeals Council properly rejected these records, as they would have had no effect on the outcome of the ALJ's determination.
In sum, the record in this case is adequate and contains evidence from which the ALJ could properly assess Plaintiff's RFC, including recent opinion evidence from medical experts and an opinion from Plaintiff's treating therapist. In other words, there was abundant medical opinion evidence in the record from which the ALJ could and did assess Plaintiff's RFC.
B. Credibility Assessment
The ALJ, who has the "opportunity to observe witnesses' demeanor, candor, fairness, intelligence and manner of testifying," is "best-positioned to make accurate credibility determinations."
*276 Whiting v. Astrue , No. CIV.A. 1:12-274, 2013 WL 427171, at *6, 2013 U.S. Dist. LEXIS 15109, at *22 (N.D.N.Y. Jan. 15, 2013), adopted , 2013 WL 427166, 2013 U.S. Dist. LEXIS 14944 (N.D.N.Y. Feb. 4, 2013). As such, "credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." Perez v. Barnhart , 440 F.Supp.2d 229, 235 (W.D.N.Y. 2006) (quotation omitted).
In assessing the credibility of a claimant's subjective complaints, the Commissioner's regulations require ALJs to employ a two-step inquiry. Meadors v. Astrue , 370 F. App'x 179, 183 (2d Cir. 2010). "First, the ALJ must determine whether the claimant suffers from a 'medically determinable impairment[ ] that could reasonably be expected to produce' " her symptoms. Id. (quoting 20 C.F.R. § 404.1529(c)(1) ). "Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." Id.
In this case, the ALJ applied the two-step inquiry. (See Dkt. 8 at 33 (discussing two-step inquiry); id. at 33-34 (considering Plaintiff's and her mother's testimony regarding Plaintiff's limitations at the administrative hearing) ). At the first step, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that "the claimant's statements concerning the intensity, persistence and limited effects of these symptoms are not entirely credible for the reasons explained in this decision." (Id. at 34). The ALJ identified specifically the testimony relevant to his credibility analysis, including Plaintiff's testimony that she took algebra in high school, finds it difficult to read, and could not work fulltime because she gets stressed out and tired, as well as her mother's testimony that Plaintiff works part-time at Marshalls but could not work fulltime because she gets very tried, stressed, and anxious; and that Plaintiff attended community college and studied liberal arts. (Id. at 33-34).
Thereafter, the ALJ discussed evidence in the record showing that, contrary to Plaintiff's and her mother's claims, Plaintiff's impairments were not disabling, including: (1) recent opinion evidence from Dr. Brownfeld, who found that Plaintiff had only some mild or moderate limitations, which did not affect her ability to function on a daily basis; (2) Plaintiff's ISP, which reflected that Plaintiff graduated from high school, was currently taking classes in college, and noted that Plaintiff "is proud to be able to take and be successful in collegiate level coursework"; (3) Plaintiff's employment at Marshalls, where she "increased her speed a lot on the job" and was "able to add an extra day of work"; (4) Plaintiff's high school ISP, which revealed average math skills and adequate language skills, as well as improved self-control; and (5) assessments from March 2010, July 2007, and June 2014, all of which are consistent in showing that Plaintiff had low average cognitive functioning. (Id. at 34-37). Accordingly, the ALJ's credibility assessment complied with the regulations, and it is clear to the Court why the ALJ found Plaintiff's subjective complaints regarding her inability to work not fully credible.
Plaintiff contends that the ALJ mischaracterized the record when he referred to Plaintiff's attending college and working at Marshalls as contrary to her claim that she is disabled. (Dkt. 10-1 at 24). Plaintiff contends that the ALJ ignored the fact that Plaintiff had difficulty working, had meltdowns *277 at work, and had a job coach at Marshalls. (Id. at 23-24). It is true that "a reason ... that relies on a mischaracterization of the record cannot be a good reason...." Wilson v. Colvin , 213 F.Supp.3d 478, 485 (W.D.N.Y. 2016) (internal quotation marks omitted). However, in this case, the ALJ did not mischaracterize any testimony; rather, the ALJ clearly considered Plaintiff's testimony and her mother's testimony that Plaintiff became anxious at work, as well as the fact that Plaintiff had a job coach at Marshalls. (See Dkt. 8 at 34-35 (both Plaintiff and her mother testified that Plaintiff could not work fulltime because she gets tired, stressed, and anxious); id. at 35 ("Though she has a job coach at her jobs at Marshalls...."); id. at 39 ("Both claimant and her mother testified at the hearing that claimant cannot work full time because she becomes [tired] and exhausted") ). However, the ALJ found this testimony not credible, based on the multiple opinions in the record - including those by Drs. Brownfeld and Shapiro - that Plaintiff had only minimal mental impairments. (See id. at 39 ("Though she does experience some limitations from her conditions, as per Drs. Shapiro and Brownfeld, neither opined they were disabling limitations. Rather, Dr. Brownfeld noted her problems 'did not appear to be significant enough to interfere with the claimant's ability to function on a daily basis' ") ). The ALJ also discussed Plaintiff's recent ISP, which revealed that Plaintiff:
has increased her speed a lot on the job and in doing so she has been able to add an extra day of work (when the schedule permits). Being able to work in other sections of the store is a goal that [Plaintiff] has achieved. She expressed that she very much enjoys her job and prefers to work in the back room. [Plaintiff] continues to learn good customer service skills and might want to attempt working on the floor again this summer, but currently, she would like to build her problem solving skills and practice utilizing different calming techniques when a difficult situation arises. She is also working on sorting bins, and scheduling by providing appropriate notice for time-off requests. [Plaintiff] has become friends with several coworkers from Marshalls and will go out to dinner with them on occasion or have them over for a ladies evening of manicures and hot tubbing.
(See id. at 530; see also id. at 35 (discussing 2014 ISP) ). The ALJ also explained that there is no evidence in the record suggesting that Plaintiff's complaints of exhaustion and anxiousness at work are linked to her impairments. (Id. at 39). In other words, the ALJ did not mischaracterize the record relating to Plaintiff's ability to work - he merely found that Plaintiff's complaints relating to her ability to work were not borne out by the medical and other evidence in the record.
Plaintiff reiterates her argument that the ALJ did not ask enough questions of Plaintiff to critique the credibility assessment. (Dkt. 10-1 at 22). However, as noted above, the ALJ's development of the record at the hearing was adequate, including his questioning of Plaintiff and her mother. (See Section II(A), supra ). Further, it is undisputed that the record before the ALJ contained records that contradicted Plaintiff's subjective complaints. Accordingly, remand on this basis is not warranted.
C. Mischaracterization of Plaintiff's Impairments
Plaintiff's third argument is that the RFC is based on "a broad over generalization of the record and reliance on IQ scores without thorough consideration of the evidence of Plaintiff's actual noted functioning...." (Dkt. 10-1 at 24). Plaintiff *278 points specifically to the ALJ's focus on IQ scores rather than "the actual meaning of those scores," and argues that the ALJ overlooked whether Plaintiff had a step 3 disability finding based on her developmental disorder and autism. (Id. at 25). The ALJ discussed Plaintiff's IQ scores at step three of the disability analysis, including that IQ scores from March 2014 and June 2014, which were scaled at 71 and 80 respectively, did not reveal sub-average intellectual functioning. (Dkt. 8 at 31). The ALJ further noted that an IQ test from March 2010 also failed to meet the requirements of Listing 12.05. (Id. at 31).
"With respect to paragraph C [of Listing 12.05], a claimant must establish the following ... (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of 60 through 70; and (3) another severe physical or mental impairment." Green v. Colvin , No. 14-CV-6632P, 2016 WL 943620, at *9, 2016 U.S. Dist. LEXIS 32495, at *26 (W.D.N.Y. Mar. 14, 2016) (citation omitted). Defendant points out that Listing 12.05 requires a valid IQ score of 70 or less. (See Dkt. 14-1 at 20). However, "IQ scores between 71 and 75 can provide a basis for a determination of equivalency to Listing 12.05(C)." Johnson v. Barnhart , 312 F.Supp.2d 415, 425 (W.D.N.Y. 2003). "Thus, the fact that [Plaintiff] did not meet the IQ score range is not dispositive of whether the ALJ should have considered whether [she] met the criteria of Listing 12.05. Rather, it turns on whether the description of [Plaintiff's] symptoms in the medical evidence appeared to match those described in Listing 12.05(C)." Black v. Berryhill , No. 17-CV-557-FPG, 2018 WL 4501063, at *5, 2018 U.S. Dist. LEXIS 160950, at *11 (W.D.N.Y. Sept. 20, 2018).
Here, the ALJ did not only consider Plaintiff's failure to meet the IQ score requirements of Listing 12.05. In considering whether Plaintiff met the requirements of Listing 12.05, he explained that none of the evidence in the record "reflect[s] any deficits in adaptive functioning prior to the developmental period or subsequent."[3] (Dkt. 8 at 31). The ALJ also explained that he considered Plaintiff's activities, including her taking two college classes and working a part-time job, as evidence that she did not meet Listing 12.05. (Id. ). Accordingly, the ALJ's step 3 analysis was not superficial, and he considered all of the evidence - including Plaintiff's activities and her functional limitations - in considering whether Plaintiff met the requirements of Listing 12.05.
Plaintiff also argues that the ALJ improperly assessed the opinions of Dr. Sullivan, Dr. DeMarle, Dr. Bauer, and Ms. Rapke. (Dkt. 10-1 at 25). The ALJ assigned their opinions "significant weight", based on the consistency of the IQ scores with which they assessed Plaintiff, and because all of these sources were consistent in not opining that Plaintiff was disabled. (Id. at 39). The ALJ further noted that their findings were consistent with subsequent consultative examinations, which showed that Plaintiff's conditions do not significantly interfere with her ability to function on a daily basis. (Id. ). The ALJ
*279 properly assigned these opinions "significant weight," based on their consistency with one another and with other opinions in the record. See Maldonado v. Berryhill , No. 16-CV-165 (JLC), 2017 WL 946329, at *25, 2017 U.S. Dist. LEXIS 34782, at *70 (S.N.D.Y. Mar. 10, 2017) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion") (quoting 20 C.F.R. § 404.1527(c)(4) ).
In sum, the RFC is supported by substantial evidence. As noted by the ALJ in his written determination, a majority of the opinions in the record - including the recent opinions by Dr. Brownfeld - do not support a finding of disability. The RFC finding, which requires Plaintiff to perform only unskilled work, limits her interactions with others and decision making, provides her with regular work breaks, and exempts her from fast-paced assembly work, is entirely consistent with the evidence in the record. For example, the RFC for unskilled work is consistent with Dr. Brownfeld's opinion that Plaintiff can follow and understand simple directions and instructions without limitations and perform simple tasks independently without limitations. See Borelli v. Comm'r of Soc. Sec. , No. 3:14-CV-1402 (GTS/WBC), 2015 WL 13744413, at *9, 2015 U.S. Dist. LEXIS 175008, at *29 (N.D.N.Y. Dec. 2, 2015) ("A [limitation] to simple directions and simple tasks is consistent with unskilled work"), adopted , 2016 U.S. Dist. LEXIS 5809 (N.D.N.Y. Jan. 19, 2016). Further, the ALJ specifically fashioned the RFC to include limitations for Plaintiff's interactions with others and decision making, breaks in her work schedule, and avoidance of fast-paced assembly line work, to accommodate Plaintiff's mild limitations in her ability to maintain attention and concentration and moderate limitations in her ability to appropriately deal with stress, per Dr. Brownfeld's opinion. See Baker v. Berryhill , No. 1:15-cv-00943-MAT, 2018 WL 1173782, at *5, 2018 U.S. Dist. LEXIS 36509, at *13 (W.D.N.Y. Mar. 6, 2018) ("Moreover, the ALJ's RFC assessment incorporated Dr. Baskin's opinion that Claimant had moderate limitations in dealing with stress by finding that Claimant could not engage in fast-paced or assembly line work"); Lafond v. Astrue , No. 6:12-CV-6046(MAT), 2013 WL 775369, at *12, 2013 U.S. Dist. LEXIS 27789, at *34 (W.D.N.Y. Feb. 28, 2013) ("The ALJ adequately accounted for [the plaintiff's] limitations in dealing with stress by restricting him to simple and repetitive tasks; no fast-paced production requirements; the necessity of making only simple decisions; and few, if any, changes in the workplace"). In other words, it is clear to the Court how the ALJ arrived at the assessed RFC, which is supported by opinion evidence in the record. There is no other opinion evidence in the record from an acceptable medical source that directly contradicts Dr. Brownfeld's opinions as to these functional limitations. Accordingly, the RFC is supported by substantial evidence, and remand on this basis is not warranted.
CONCLUSION
For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 14) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied. The Clerk of Court is directed to enter judgment and close this case.
SO ORDERED.

When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

The evidence to which the ALJ refers is not discussed at Step 3 of the analysis; however, evidence relating to Plaintiff's functional limitations is discussed at length in the ALJ's explanation of how he arrived at the RFC assessment. See Stopa v. Berryhill , No. 3:17-cv-00934 (SRU), 2018 WL 4521938, at *12, 2018 U.S. Dist. LEXIS 161402, at *37 (D. Conn. Sept. 21, 2018) ("In spite of the ALJ's failure to explain her reasoning at step three of the sequential analysis, I was able to look to other portions of the ALJ's decision, and to the medical records as a whole, to determine that her decision was supported by substantial evidence").