ELIZABETH A. WOLFORD, United States District Judge
INTRODUCTION
Represented by counsel, Plaintiff Kathryn L. Kuhaneck ("Plaintiff") brings this *243 action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 11; Dkt. 15), and Plaintiff's reply (Dkt. 16). For the reasons discussed below, Plaintiff's motion (Dkt. 11) is granted, the Commissioner's motion (Dkt. 15) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.
BACKGROUND
Plaintiff protectively filed her application for DIB on August 20, 2014. (Dkt. 7 at 42, 110).[1] In her application, Plaintiff alleged disability beginning August 4, 2014, due to several impairments, including: a herniated disc in her back; arthritis in her left knee; fibromyalgia ; endometriosis ; interstitial cystitis ; depression; anxiety; migraines; nerve damage and neuropathy in her left leg and foot; and Castleman's syndrome. (Id. at 42, 111-12). Plaintiff's application was initially denied on November 19, 2014. (Id. at 42, 125-30). A video hearing was held before administrative law judge ("ALJ") Roxanne Fuller on August 23, 2016. (Id. at 42, 66-92). Plaintiff appeared in Rochester, New York, and the ALJ presided over the hearing from Alexandria, Virginia. (Id. ). On December 19, 2016, the ALJ issued an unfavorable decision. (Id. at 39-55). Plaintiff requested Appeals Council review; her request was denied on January 11, 2018, making the ALJ's determination the Commissioner's final decision. (Id. at 6-9). This action followed.
LEGAL STANDARD
I. District Court Review
"In reviewing a final decision of the [Social Security Administration ("SSA") ], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue , 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); see also 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue , 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." Schaal v. Apfel , 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); see also Wagner v. Sec'y of Health & Human Servs. , 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart , 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler , 748 F.2d 109, 112 (2d Cir. 1984) ).
*244 II. Disability Determination
An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. See Parker v. City of New York , 476 U.S. 467, 470-71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.
At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). Id. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (id. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. See id. § 404.1520(e).
The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. Id. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. Id. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. Rosa v. Callahan , 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); see also 20 C.F.R. § 404.1560(c).
DISCUSSION
I. The ALJ's Decision
In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on June 30, 2018. (Dkt. 7 at 44). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since August 4, 2014, the alleged onset date. (Id. ).
At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "anxiety; depression; left knee arthritis status post-surgery; fibromyalgia ; complex regional pain syndrome ; obesity ; Ehlers-Danlos syndrome ; and history of herniated discs status post spinal fusion." (Id. ). The ALJ further found that Plaintiff's medically determinable impairments of endometriosis and migraine headaches were non-severe. (Id. at 44-45).
At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (Id. at 45). The ALJ particularly considered the criteria of Listings 1.04, 12.04, and *245 12.06 in reaching her conclusion. (Id. at 45-47).
Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a range of sedentary work as defined in 20 C.F.R. § 404.1567(a), with the additional limitations that Plaintiff:
is limited to occasional climbing of ramps or stairs; occasional climbing of ladders, ropes, or scaffolds; and occasional balancing, stooping, crouching, kneeling, and crawling; able to sit for one hour, and then stand for 15 minutes, alternating throughout the workday; is limited to occasional exposure to unprotected heights; occasional exposure to moving mechanical parts; occasional operating a motor vehicle; occasional exposure to temperature extremes; able to perform simple, routine, repetitive tasks.
(Id. at 47). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Id. at 53).
At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of information clerk, machine tender, and order clerk. (Id. at 53-54). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (Id. at 54-55).
II. Remand of this Matter for Further Proceedings is Necessary
Plaintiff asks the Court to remand this matter to the Commissioner, arguing: (1) the ALJ failed to adequately explainer her reasons for rejecting opinion evidence in the record, including the opinion of Plaintiff's treating physician, Cynthia Teerlinck, M.D; (2) the ALJ assessed the RFC in absence of a supporting medical opinion; and (3) the Appeals Council failed to properly address new evidence submitted by Plaintiff's treating surgeon and primary care physician. (Dkt. 11-1 at 33-40). For the reasons set forth below, the Court finds that the ALJ erred in evaluating the opinion evidence of Dr. Teerlinck, and that this error necessitates remand for further administrative proceedings.
A. Assessment of Opinion Evidence
Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the opinion." Halloran v. Barnhart , 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors include:
(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.
Id. "An ALJ does not have to explicitly walk through these factors, so long as the Court can conclude that the ALJ applied the substance of the treating physician rule[.]"
*246 Scitney v. Colvin , 41 F.Supp.3d 289, 301 (W.D.N.Y. 2014) (internal quotation omitted).
Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. § 404.1527 (c)(2) ; see also Harris v. Colvin , 149 F.Supp.3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons' " for the weight given to a treating source opinion." (quoting Halloran , 362 F.3d at 32 ) ). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific ...." Harris , 149 F.Supp.3d at 441 (internal quotation marks omitted). The Second Circuit "[does] not hesitate to remand when the Commissioner's decision has not provided 'good reasons' for the weight given to a [treating physician's] opinion and [it] will continue remanding when [it] encounter[s] opinions from [ALJs] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Halloran , 362 F.3d at 33.
Dr. Teerlinck completed a physical medical source statement on January 13, 2015. (Dkt. 7 at 793-96). Dr. Teerlinck identified Plaintiff's tender fibromyalgia points and limited range of motion in her back as objective signs of her impairments. (Id. at 793). Dr. Teerlinck opined that Plaintiff could walk less than one city block without rest or severe pain. (Id. at 794). Plaintiff could sit for thirty minutes at one time, stand for fifteen minutes at one time, and could sit or stand/walk for about two hours in an eight-hour day. (Id. ). Plaintiff required a job that permitted her to shift positions at will from sitting, standing, or walking, and needed to walk for five minutes, every forty-five minutes. (Id. ). Further, due to her muscle weakness, chronic fatigue, and pain, Plaintiff would need to take three to four unscheduled breaks of ten minutes in length. (Id. ). Plaintiff did not need a cane or assistive device. (Id. at 795). Dr. Teerlinck further opined that Plaintiff could occasionally lift ten pounds and never lift twenty pounds or more. (Id. ). Plaintiff could never twist, and rarely stoop (bend), crouch/squat, climb stairs, or climb ladders. (Id. ). She did not have any significant limitations for reaching, handling, or fingering. (Id. ). According to Dr. Teerlinck, Plaintiff would be "off task" fifteen percent of the workday and was capable of performing low-stress work. (Id. at 796). Plaintiff's impairments were likely to produce "good days" and "bad days," and she would be absent from work as a result of her impairments or treatment more than four days per month. (Id. ).
The ALJ afforded Dr. Teerlinck's opinion "some weight." (Id. at 52). The ALJ explained that while she agreed with Dr. Teerlinck that Plaintiff was capable of performing a low-stress job and could lift ten pounds, there was "little evidence in Dr. Teerlinck's records to support her opinions that the claimant would need breaks three to four times a day or miss more than four days of work a month." (Id. ). The ALJ did not address Dr. Teerlinck's assessment of Plaintiff's ability to walk, sit, stoop, crouch, climb stairs and ladders, or her need to shift positions at will.
The Court has reviewed the medical record, which contains visit notes from Dr. Teerlinck from January 2015 through January 2016. (Id. at 873-81, 977-84). The visit notes reveal ongoing complaints of pain, including pain while sitting, standing, and walking, difficulty walking, and Plaintiff's complaints of needing to reposition frequently. (Id. at 873, 876, 879, 880, 979). The records also reveal that Plaintiff received *247 a steroid injection in her back and a nerve block in her left foot, and required visits to urgent care and the emergency room. (Id. at 873, 878, 979). At the administrative hearing, Plaintiff testified that she has had fourteen surgeries. (Id. at 76). In other words, Dr. Teerlinck's treatment notes, as well as other information in the record, appear to support Dr. Teerlinck's assessment of Plaintiff's limitations, including her need for breaks and absences.[2] Without further explanation by the ALJ, the Court is unclear as to why, specifically, the ALJ chose to reject Dr. Teerlinck's opinion on these issues. See Hayden v. Comm'r of Soc. Sec. , 338 F.Supp.3d 129, 138 (W.D.N.Y. 2018) (remand required where ALJ failed to properly assess treating physician's opinion, including his opinion that the plaintiff would be absent about two days per month).
Further, the ALJ failed to address certain portions of Dr. Teerlinck's opinion, including Plaintiff's ability to walk, sit, stoop, crouch, climb stairs and ladders, or her need to shift positions at will, despite the fact that Dr. Teerlinck's opinion as to Plaintiff's ability to perform these activities diverges with the assessed RFC.[3] For example, the RFC provides for occasional stooping, crouching, and climbing, while Dr. Teerlinck opined that Plaintiff was able to do those activities only rarely. Further, sedentary work requires occasional walking, while Dr. Teerlinck opined that Plaintiff had significant limitations for walking, including that she was unable to walk one city block without rest or severe pain.[4] Additionally, while the RFC provides Plaintiff with the ability to sit for one hour, and then stand for 15 minutes, alternating throughout the workday, the ALJ did not discuss why she declined to adopt Dr. Teerlinck's opinion that Plaintiff can sit for only 30 minutes at one time, or her opinion that Plaintiff would need to shift positions at will. The Court is cognizant that "[i]n resolving evidence, an ALJ is entitled to accept parts of a doctor's opinion and reject others.... However, an ALJ may not credit some of a doctor's findings while ignoring other significant deficits that the doctor identified without providing some reasonable explanation." Matthews v. Comm'r of Soc. Sec. , No. 1:17-cv-00371-MAT, 2018 WL 4356495, at *3, 2018 U.S. Dist. LEXIS 156281, at *7 (W.D.N.Y. Sept. 13, 2018) (internal quotations and citations omitted). As noted above, Dr. Teerlinck's visit notes document Plaintiff's difficulty sitting, standing, and walking, and the ALJ's failure to address the portions of Dr. Teerlinck's opinion she rejected was error. See *248 Labonte v. Berryhill , No. 16-CV-518-FPG, 2017 WL 1546477, at *3, 2017 U.S. Dist. LEXIS 66086, at *8 (W.D.N.Y. May 1, 2017) ("when an ALJ adopts only portions of a medical opinion he or she must explain why the remaining portions were rejected."); Searles v. Astrue , No. 09-CV-6117, 2010 WL 2998676, at *4, 2010 U.S. Dist. LEXIS 130944, at *10 (W.D.N.Y. July 27, 2010) ("An ALJ may not credit some of a doctor's findings while ignoring other significant deficits that the doctor identified."). The ALJ's failure to explain her assessment of portions of Dr. Teerlinck's medical opinion "prevents the Court from meaningfully reviewing [her] decision, and warrants remand." Matthews , 2018 WL 4356495, at *3-4, 2018 U.S. Dist. LEXIS 156281, at *8.
The Court further notes that the ALJ failed to consider the consistency of Dr. Teerlinck's opinion with the record as a whole, a consideration that is required by the treating physician rule. Halloran , 362 F.3d at 32. The ALJ's failure to consider this factor is problematic, as other medical opinions in the record are consistent with Dr. Teerlinck's assessment of Plaintiff's limitations. Specifically, Plaintiff's chiropractor, Jordan Conrad, D.C., opined that Plaintiff could walk only one to two city blocks without pain, sit for thirty minutes at one time, was limited to standing/walking for two hours in an eight-hour day, and would be absent more than four days per month. (Dkt. 7 at 1067-69). Further, the consultative examiner, Harbinder Toor, M.D., opined that Plaintiff had moderate to severe limitations for standing, walking, squatting, bending, and lifting. (Id. at 744). In light of the evidence in the record supporting Dr. Teerlinck's assessment of Plaintiff's limitations, it was error for the ALJ to reject those assessed limitations without further explanation. See Lopez v. Comm'r of Soc. Sec. , No. 13-CV-0979 (JFB), 2014 WL 4700231, at *15, 2014 U.S. Dist. LEXIS 133780, at *36 (E.D.N.Y. Sept. 22, 2014) (remand required where ALJ failed to analyze treating physician opinion in the context of its consistency with the record as a whole, and failed to address that treating physician's opinion was "corroborated to varying degrees by the conclusions of other physicians who examined plaintiff").
In sum, Dr. Teerlinck, one of Plaintiff's treating physicians, submitted a detailed medical source statement, which the ALJ largely rejected with the conclusory statements that "I do not find much support for some of the opinions of Dr. Teerlinck," and "there is little evidence in Dr. Teerlinck's records to support her opinions that the claimant would need breaks three to four times a day or miss more than four days of work a month." (See Dkt. 7 at 52). Further explanation is required before rejecting an opinion by a treating source, particularly where information in the treatment notes document Plaintiff's complaints, and the treating source identifies objective findings for Plaintiff's impairments. Accordingly, remand is required. On remand, the ALJ is directed to more thoroughly consider Dr. Teerlinck's opinion in light of the treating physician rule and, should she decide not to adopt that opinion, offer good reasons supporting her decision.
B. Plaintiff's Remaining Arguments
As set forth above, Plaintiff has identified additional reasons why she contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these issues. See, e.g., Bell v. Colvin , No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10, 2016 U.S. Dist. LEXIS 165592, at *32 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to *249 the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); Morales v. Colvin , No. 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23, 2015 U.S. Dist. LEXIS 58236, at *80 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), adopted , 2015 WL 2137776, 2015 U.S. Dist. LEXIS 58203 (S.D.N.Y. May 4, 2015).
CONCLUSION
For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 11) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 15) is denied. The Clerk of Court is directed to enter judgment and close this case.
SO ORDERED.

When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/LCF-generated page numbers that appear in the upper righthand corner of each document.

Both the ALJ and Plaintiff refer to a treatment record at Exhibit B33F/2, found at page 1078 of the medical record, contending that Dr. Teerlinck found that Plaintiff had a normal range of motion in all major joints except her ankle. (See Dkt. 7 at 52; Dkt. 15-1 at 16). However, this record is not from Dr. Teerlinck; rather, it is a record from Hemant Kalia, M.D., of the Unity Spine Center. (See id. at 1082-86).

Although not specifically addressed in the written determination, the ALJ appears to have adopted Dr. Teerlinck's opinion that Plaintiff is able to stand for fifteen minutes at one time and for about two total hours per day, as the RFC provides that Plaintiff is able to stand for fifteen minutes, every hour, during an eight-hour workday.

20 C.F.R. § 404.1567(a) defines "sedentary work" as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."