ELIZABETH A. WOLFORD, United States District Judge *251 INTRODUCTION
Proceeding pro se , Plaintiff Brian N. Walker, Jr., ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for supplemental security income ("SSI") or children's insurance benefits under the social security act. (Dkt. 1; Dkt. 4; Dkt. 5). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court is the Commissioner's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, and Plaintiff's letter response. (Dkt. 15; Dkt. 20). For the reasons discussed below, the Commissioner's motion (Dkt. 15) is granted.
BACKGROUND
Plaintiff received SSI payments based on disability as a child. (Dkt. 11 at 10).[1] Eligibility for these benefits was re-determined when Plaintiff reached the age of eighteen, at which time it was determined that Plaintiff was no longer disabled. (Id. ). This determination was upheld upon reconsideration by a State Agency Disability Hearing Officer, and Plaintiff thereafter filed a written request for a hearing. (Id. ). Plaintiff also filed an application for child's insurance benefits, alleging disability prior to his twenty-second birthday. (Id. ). Plaintiff's claim for children's insurance benefits was also denied and appealed. (Id. ).
A hearing was held before administrative law judge ("ALJ") Connor O'Brien in Rochester, New York, on July 1, 2015.[2] (Id. at 10, 435-75). On September 21, 2015, the ALJ issued an unfavorable decision. (Id. at 9-20). Plaintiff requested Appeals Council review; his request was denied on June 8, 2017, making the ALJ's determination the Commissioner's final decision. (Id. at 5-7). This action followed.
LEGAL STANDARD
I. District Court Review
"In reviewing a final decision of the [Social Security Administration ("SSA") ], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue , 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); see also 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
*252 Moran v. Astrue , 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." Schaal v. Apfel , 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); see also Wagner v. Sec'y of Health & Human Servs. , 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart , 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler , 748 F.2d 109, 112 (2d Cir. 1984) ).
II. Disability Determination
An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. See Parker v.City of New York , 476 U.S. 467, 470-71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.
At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). Id. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (id. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. See id. § 416.920(e).
The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. Id. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. Id. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. Rosa v. Callahan , 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).
DISCUSSION
I. The ALJ's Decision
In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. Initially, the ALJ determined that Plaintiff attained the age of eighteen on December 26, 2011, and was eligible for supplemental security income benefits as a child for the month preceding the month in which he attained the age of eighteen. (Dkt. 11 at 14). Plaintiff had not yet attained the age of twenty-two at the time of *253 his application for child's insurance benefits. (Id. ).
At step two, the ALJ found that Plaintiff suffered from the severe impairments of obesity, attention deficit hyperactivity disorder (ADHD), and mood disorder. (Id. ).
At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (Id. at 15). The ALJ particularly considered the criteria of Listing 12.04 in reaching her conclusion. (Id. at 15-16).
Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a range of medium work as defined in 20 C.F.R. § 416.967(c), with the additional limitations that Plaintiff:
can occasionally lift/carry up to 50 pounds, frequently 20. He requires a sit/stand option that allows individual to change position every 90 minutes for up to five minutes without leaving the workstation. He can occasionally stoop (bend) to the floor. He can perform simple unskilled work with a regular schedule. He can adjust to occasional changes in work setting. He cannot interact with the public and cannot perform teamwork. Occasionally, he can make work-related decisions. He requires up to three additional, short, less-then-5-minute, unscheduled breaks beyond normal scheduled breaks. He can work to meet daily goals, but not maintain an hourly, machine-driven, assembly line production rate.
(Id. at 16). At step four, the ALJ found that Plaintiff has no past relevant work. (Id. at 19).
At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of housekeeping, laundry laborer, and hand packager.[3] (Id. at 19-20). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (Id. at 20).
II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error
The Court has reviewed the record and Plaintiff's letter response, and considered the findings made by the Commissioner at steps one through five of the sequential evaluation. The ALJ's initial determinations-that Plaintiff attained the age of eighteen on December 26, 2011, and was eligible for supplemental security income benefits as a child for the month preceding the month in which he attained the age of eighteen, and that Plaintiff had not yet attained the age of twenty-two at the time of his application for child's insurance benefits-were favorable to Plaintiff, and cannot be a basis for remand. The ALJ's step two determination also is favorable to Plaintiff, as the ALJ determined that Plaintiff had severe impairments, including obesity, ADHD, and mood disorder. (See Dkt. 11 at 14).
The ALJ's step three determination was proper. The ALJ carefully considered the criteria of Listing 12.04. (Id. at 15-16). The ALJ considered each of Plaintiff's severe impairments in the context of the "paragraph *254 B" criteria, i.e. , whether Plaintiff's mental impairments resulted in at least two of the following: marked restrictions of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (Id. at 15). The ALJ evaluated each of these four categories separately and cited to specific exhibits in the record supporting her determinations. (Id. ). The ALJ's conclusions that Plaintiff: had mild restrictions in his activities of daily living; moderate difficulties in social functioning; moderate difficulties for concentration, persistence, or pace; and had no episodes of decompensation for an extended duration, are supported by the medical record. (Id. ). Similarly, the ALJ considered whether the criteria of "paragraph C" were satisfied. (Id. ). Accordingly, the ALJ's step three determination is supported by substantial evidence.
The ALJ's RFC finding also is supported by substantial evidence. For example, the ALJ assessed all of the opinion evidence in the record, including the consultative examinations ordered by the ALJ. (Id. at 18-19). The ALJ first discussed the comprehensive psychological exam performed in June 2014, at the request of Plaintiff's ACCESS-VR counselor. (Id. at 18). The examiner opined that Plaintiff would have problems involving high interactions with others and had poor frustration tolerance and difficulty sustaining effort. (Id. at 267-75). The ALJ afforded this opinion "some weight," based on the specialty, and also because it was noted that Plaintiff put forth poor effort on the tests. (See, e.g., id. at 274 ("As detailed above, testing indicated that Mr. Walker did not engage in testing of ability. As a result, his performance on the WAIS-IV and WRAT4 are likely underestimates of his true abilities."); id. (test results not interpretable "because of Mr. Walker's high level of random responding. Based on other testing, it appears likely that this resulted from Mr. Walker either responding randomly to questions and/or taking an uncooperative test-taking approach.") ). The ALJ therefore explained that in assessing the RFC, she relied more heavily on Plaintiff's school records, which showed consistent low-average to average cognitive abilities. (Id. at 18). The Court has reviewed the June 2014 psychological exam and finds that the ALJ's weighing of the examiner's opinion was proper. See Frazer v. Comm'r of Soc. Sec. , No. 5:16-CV-1324 (CFH), 2018 WL 1033286 at *, 2018 U.S. Dist. LEXIS 28437 at *23 (N.D.N.Y. Feb. 22, 2018) (ALJ properly discredited portion of consultative examiner's opinion, where doctor found that the plaintiff was intentionally giving poor effort during the examination); Green v. Comm'r of Soc. Sec. , No. 14-CV-5489 (KAM), 2017 WL 571489 at *19-20, 2017 U.S. Dist. LEXIS 20100 at *61-63 (E.D.N.Y. Feb. 13, 2017) (ALJ gave less weight to doctor's opinion because the plaintiff refused to participate in many of the tests and showed poor effort in doing some of the tests, and Court concluded that ALJ "acted within her authority when she discounted some opinions regarding plaintiff's alleged disability.").
The ALJ next discussed the opinions offered by the consultative examiners, Yu-Ying Lin, Ph.D. and Harbinder Toor, M.D. (Dkt. 11 at 17). Dr. Lin, who performed Plaintiff's mental examination, opined that Plaintiff:
can follow and understand simple directions and instructions. He can perform simple tasks independently. His is mildly limited in maintaining attention and concentration. He is able to maintain a regular schedule. He can learn new tasks. He can perform complex *255 tasks, but with supervision. He is mildly to moderately limited in making appropriate decisions. He is mildly limited in relating adequately with others. He is moderately limit[ed] in appropriately dealing with stress. Difficulties are caused by lack of motivation and distractibility.
(Id. at 380). The ALJ explained that she afforded "some weight" to Dr. Lin's opinion, as the terms of her opinion were not defined. However, the ALJ found that Dr. Lin's finding of some limitations was consistent with her evaluation findings, as well as treatment notes from Plaintiff's mental health provider. (Id. at 18). The Court has reviewed Dr. Lin's evaluation and opinion and finds that the ALJ's consideration and weighing of this opinion was proper. See Marshall v. Comm'r of Soc. Sec. , No. 5:16-CV-1245 (GTS/WBC), 2017 WL 9509959 at *5, 2017 U.S. Dist. LEXIS 197929 at *15 (N.D.N.Y. Sept. 19, 2017) (ALJ properly afforded medical opinion " 'limited weight' because the terminology on the form was not defined."), adopted , 2017 WL 5905570, 2017 U.S. Dist. LEXIS 196688 (N.D.N.Y. Nov. 30, 2017) ; Bunce v. Comm'r of Soc. Sec. , No. 6:14-CV-761 (GTS/ATB), 2015 U.S. Dist. LEXIS 122001, at *33 (N.D.N.Y. July 23, 2015) (ALJ's consideration of medical opinion evidence supported by substantial evidence where he assigned the opinion of consultative examiner "great weight," because, among other things, it was consistent with consultative examiner's own examination findings), adopted , 2015 WL 5330299, 2015 U.S. Dist. LEXIS 121148 (N.D.N.Y. Sept. 11, 2015). The Court further notes that the assessed mental RFC-which provides that Plaintiff: can perform simple, unskilled work with a regular schedule; adjust to occasional changes in the work setting; cannot engage in contact with the public and not perform teamwork; occasionally make work-related decisions; take three unscheduled breaks; and work to meet daily goals, but not maintain an assembly line production rate-is consistent with the limitations assessed by Dr. Lin.
Dr. Toor evaluated Plaintiff on March 2, 2015. (Id. at 366). Dr. Toor opined that Plaintiff had mild to moderate limitations for standing, walking, sitting, bending, and lifting due to his lower back pain. (Id. at 368). Dr. Toor found that Plaintiff could: continuously lift and carry up to twenty pounds and occasionally lift and carry up to fifty pounds; sit, stand, and walk for thirty minutes without interruption; sit, stand, and walk for a total of four hours each in an eight-hour workday; and continuously perform all postural activities (climbing, balancing, stooping, kneeling, crouching, crawling). (Id. at 371-74). Dr. Toor noted that any limitations were caused by Plaintiff's back pain. (Id. at 371-72). The ALJ gave Dr. Toor's opinion "some weight," based on his programmatic expertise, but also noted that Plaintiff has had "very little treatment" for his back pain, and also has been advised to lose weight. (Id. at 18). The Court finds that the ALJ's consideration and weighing of Dr. Toor's opinion was proper, particularly considering Plaintiff's conservative treatment for his back pain, which he attributed to the removal of a lipoma from his back in 2013. (Id. at 366, 446). The Court further notes that the ALJ's assessment of Dr. Toor's opinion was appropriate, considering that Plaintiff reported to Dr. Toor that he is able to clean and do laundry weekly, shop as needed, and play video games (id. at 366), and because Dr. Toor's physical examination of Plaintiff's musculoskeletal system was mostly normal (id. at 368). See Jenkins v. Comm'r of Soc. Sec. , No. 18-CV-6092-FPG, 2019 WL 483838 at *4, 2019 U.S. Dist. LEXIS 20077 at *12 (W.D.N.Y. Feb. 7, 2019) (ALJ's assigning "some weight" to medical opinions was proper, *256 where treatment notes showed conservative treatment and positive response to care, and their assessments did not correlate well with their examination findings); Dinapoli v. Berryhill , No. 6:17-CV-06760-MAT, 2019 WL 275685 at *3-4, 2019 U.S. Dist. LEXIS 9836 at *10 (W.D.N.Y. Jan. 22, 2019) ("Without supporting evidence and explanation, it is proper for Dr. Koretz's opinion to be given less weight, particularly in the face of the bulk of other evidence weighing against it, such as ... the recommendations of treatment providers of conservative treatment."). Finally, the assessed physical RFC-which provides that Plaintiff: can frequently lift/carry twenty pounds and occasionally lift/carry fifty pounds; is entitled to a sit/stand option that permits Plaintiff to shift positions; and can occasionally stoop-is largely consistent with Dr. Toor's assessment of Plaintiff's physical limitations.
The ALJ also properly evaluated Plaintiff's credibility. The ALJ, who has the "opportunity to observe witnesses' demeanor, candor, fairness, intelligence and manner of testifying," is "best-positioned to make accurate credibility determinations." Whiting v. Astrue , No. CIV.A. 1:12-274, 2013 WL 427171 at *6, 2013 U.S. Dist. LEXIS 15109 at *22 (N.D.N.Y. Jan. 15, 2013), adopted , 2013 WL 427166, 2013 U.S. Dist. LEXIS 14944 (N.D.N.Y. Feb. 4, 2013). As such, "credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." Perez v. Barnhart , 440 F.Supp.2d 229, 235 (W.D.N.Y. 2006) (quotation omitted).
In assessing the credibility of a claimant's subjective complaints, the Commissioner's regulations require ALJs to employ a two-step inquiry. Meadors v. Astrue , 370 F. App'x 179, 183 (2d Cir. 2010). "First, the ALJ must determine whether the claimant suffers from a 'medically determinable impairment[ ] that could reasonably be expected to produce' " his symptoms. Id. (quoting 20 C.F.R. § 404.1529(c)(1) ). "Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." Id.
In this case, the ALJ applied the two-step inquiry. The ALJ found that while Plaintiff's medically-determinable impairments could reasonably be expected to cause some of the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (Dkt. 11 at 16). Specifically, the ALJ explained that Plaintiff's complaints of disability were belied by his activities of daily living, and that Plaintiff had not generally received the type of medical treatment one would expect of a disabled individual. (Id. at 18-19; see also id. at 441-49 (Plaintiff can read and write in English, read a newspaper, do basic math, had no problems going down the stairs, carry garbage and laundry, shop, shower, dress himself, play videogames, and had good reports from VESID while working at Marshall's with a job coach) ). Finally, the ALJ noted that the record reveals gaps in Plaintiff's treatment history, including the inconsistent use of ADHD medication, and Plaintiff's waiting ten months before seeking mental health treatment. (Id. at 19; see also id. at 17 ("The claimant was off [his ADHD] medications for an unclear amount of time but then asked to restart the medications in September 2014. Despite his allegations of depression, the claimant did not bring this up to his providers until well after his cessation. In January 2014, the *257 claimant reported to Dr. Kadakia that he was depressed. Although a referral was given at that time, the claimant did not enter mental health treatment for another ten months.") ). The ALJ concluded that "[t]his indicates the allegedly disabling symptoms may not have been as severe as alleged." (Id. ). The ALJ's consideration of these issues was proper, and her conclusion regarding Plaintiff's credibility is supported by substantial evidence. See Pahl v. Berryhill , No., 2018 WL 4327813 16-CV-538S, 2018 U.S. Dist. LEXIS 154720 at *14 (W.D.N.Y. Sept. 11, 2018) (conservative course of treatment supported the ALJ's determination that the plaintiff was not as debilitated as she testified); Pennock v. Comm'r of Soc. Sec. , No. 7:14-CV-1524 (GTS/WBC)2016 WL 1128126, at *5, 2016 U.S. Dist. LEXIS 36514, at *14-15 (N.D.N.Y. Feb. 23, 2016) ("An ALJ is entitled to take a plaintiff's activities of daily living into account in making a credibility determination."), adopted , 2016 WL 1122065, 2016 U.S. Dist. LEXIS 36516 (N.D.N.Y. Mar. 22, 2016) ; Lee v. Colvin , No. 13-CV-1151-JTC, 2015 WL 3505791, 2015 U.S. Dist. LEXIS 71883 at *16 (W.D.N.Y. June 3, 2015) (an ALJ is permitted to "consider plaintiff's noncompliance with treatment as a factor weighing against his credibility.").
At step four, the ALJ found that Plaintiff had no past relevant work. (Dkt. 11 at 19). This finding was favorable to Plaintiff and does not support reversal or remand. See Walker v. Berryhill , No. 6:17-CV-06138 (MAT), 2017 WL 6492520 at *, 2017 U.S. Dist. LEXIS 208420 at *9 (W.D.N.Y. Dec. 19, 2017).
Finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including the occupations of housekeeping, laundry laborer, and hand packager. (Dkt. 11 at 19-20). Because she assessed additional limitations related to Plaintiff's mental functioning, the ALJ properly called a VE to testify at the administrative hearing and relied on her testimony when making the step five determination. (Id. at 19-20, 470-74). See Marcano v. Berryhill , No. 16cv08033 (DF), 2018 WL 2316340 at *16, 2018 U.S. Dist. LEXIS 78443 at *45 (S.D.N.Y. Apr. 30, 2018) ("Where ... the claimant suffers from nonexertional impairments (such as mental impairments ) that significantly limit the range of work permitted by his [or her] exertional limitations, the ALJ is required to consult with a vocational expert, rather than rely exclusively on these published Grids") (internal quotations and citations omitted) (alteration in original). At the administrative hearing, the ALJ described the assessed RFC. (Id. at 471-73). In response, the VE testified that, with the limitations in the assessed RFC, Plaintiff would be capable of performing the occupations of housekeeping cleaner and laundry laborer. (Id. ). The ALJ's step five determination is supported by the record, including testimony by the VE. See Dumas v. Schweiker , 712 F.2d 1545, 1554 (2d Cir. 1983) ("[t]here is substantial record evidence to support the assumption upon which the vocational expert based his opinion. Consequently, his opinion that [the plaintiff] had acquired skills in prior work that were transferable to sedentary jobs abundant in the national economy satisfied the Secretary's burden of showing the existence of alternative substantial gainful employment suited to [the plaintiff's] physical and vocational capabilities"). Accordingly, the ALJ's step five determination is supported by substantial evidence.
On November 1, 2018, Plaintiff's mother, on behalf of Plaintiff, filed a letter response to Defendant's motion. (Dkt. 20). In *258 the letter, Plaintiff explained that the record contains several inaccuracies regarding Plaintiff's activities. Specifically, contrary to the record, Plaintiff contends that he does not play sports, he does not have the reading level or computer skills of an adult, he was never bitten by a dog or injured his hand in a fight, he was not employed by Marshall's Department Store ("Marshall's"), and he does not sell drugs. (Id. at 2-3).
As an initial matter, the Court has reviewed the written determination and the RFC which, as noted above, is supported by substantial evidence. To the extent any of the information highlighted by Plaintiff is in fact false, it does not appear from the written determination that the ALJ relied on any of this information in assessing the RFC. In other words, the issues raised by Plaintiff do not have any impact on the Court's review of the Commissioner's decision.
Many of the above-mentioned issues raised by Plaintiff were covered at the administrative hearing, where Plaintiff testified under oath. (See Dkt. 11 at 440-41). To the extent Plaintiff ever claimed he possessed a driver's license, that issue was resolved at the administrative hearing, where he testified that he never had a driver's license. (Id. at 443). Accordingly, the ALJ would not have considered Plaintiff's possession of a driver's license when assessing his RFC. Further, at the administrative hearing, based on Plaintiff's testimony and records from VESID, the ALJ determined that Plaintiff previously worked at Washington Inventory Service, Spamas Data Center, and Marshall's. (Id. at 443-44). Plaintiff worked at all of these places "very brief[ly]," and the ALJ ultimately determined that Plaintiff had no past relevant work. (Id. at 444). Indeed, Plaintiff's mother, who was under oath at the hearing, also testified that Plaintiff worked at Marshall's through VESID. (Id. at 459-60). In other words, Plaintiff's claim in his letter response that he never worked at Marshall's is belied by his own sworn testimony and the testimony of his mother, both of whom apparently agreed that Plaintiff spent at least some time working at Marshall's. Regarding Plaintiff's participation in sports, Plaintiff testified at the administrative hearing that he does not work out (id. at 447); accordingly, the ALJ was aware at the time she assessed the RFC that Plaintiff no longer participated in athletic pursuits.[4] Finally, as to Plaintiff's drug use, Plaintiff testified at the administrative hearing that he used to sell drugs (marijuana), but no longer engages in that type of activity. (Id. at 453-54). Whether Plaintiff used to sell drugs is not a factor the ALJ took into account when assessing Plaintiff's physical or mental RFC, or his credibility finding. To the extent Plaintiff's testimony at the administrative hearing was inaccurate, that inaccuracy has no bearing on the assessed RFC or the Commissioner's decision.
CONCLUSION
For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 15) is granted. The Clerk of *259 Court is directed to enter judgment and close this case.
SO ORDERED.

When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document. However, the administrative transcript (Dkt. 11; Dkt. 14) was manually filed; therefore, for those documents, the Court has cited to the page numbers as they appear on the manually-filed transcript.

The ALJ also held hearings on December 9, 2014, and on March 27, 2015; however, the hearings were deferred so that the record could be adequately developed, and so that Plaintiff's newly-appointed attorney could be present at the hearing. (See Dkt. 11 at 478-87; Dkt. 14 at 490-514).

Although the written determination states that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff is able to perform the work of housekeeping, laundry laborer, and hand packager, the Court notes that, at the administrative hearing, the VE testified that the limitation that Plaintiff "can work to meet daily goals, but not maintain an hourly, machine-driven, assembly line production rate," would eliminate the hand packager position. (Dkt. 11 at 473).

In the written determination, the ALJ noted that, historically, Plaintiff's ADHD was stable, and that Plaintiff "enjoyed swimming and basketball." (Dkt. 11 at 17). The ALJ cited to a treatment note in the record from Plaintiff's primary care physician, Dr. Kadakia. The Court has reviewed that treatment note, which indicates that in August 2012, Plaintiff engaged in swimming and football for exercise. (Id. at 325). To the extent that statement was inaccurate, any such error was harmless. Plaintiff's physical RFC is supported by substantial evidence and was assessed based on his physical abilities as they existed at the time of the written determination, which the ALJ knew did not include exercise.